McMORAN O'CONNOR & BRAMLEY
A Professional Corporation
Ramshorn Executive Centre
Bldg D. Suite D-1
2399 Hwy 34
Manasquan, New Jersey 08736
(732)223-7711
Attorneys for Plaintiff,
Richard T. Aicher, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RICHARD T. AICHER, JR.,

      Plaintiff,

   vs.

IBEW LOCAL UNION NO. 269 JOINT
TRUST FUNDS OFFICE, BOARD OF
TRUSTEES OF IBEW LOCAL UNION NO.
269 PENSION PLAN, BOARD OF
TRUSTEES OF IBEW LOCAL UNION NO.
269 ANNUITY FUND, BOARD OF
TRUSTEES OF IBEW LOCAL UNION NO.
269 HEALTH & WELFARE FUND, BOARD
OF TRUSTEES OF IBEW LOCAL UNION
NO. 269 SUPPLEMENTAL WELFARE
FUND, BOARD OF TRUSTEES OF IBEW
LOCAL UNION NO. 269 JOINT
APPRENTICESHIP FUND, and IBEW
LOCAL UNION NO. 269 PENSION
PLAN,

      Defendants.

Civil Action No.
3:12-cv-01781-FLW-TJB

**AMENDED COMPLAINT**

RICHARD AICHER, residing at 11 Heritage Way, Lawrenceville,
New Jersey, by way of Complaint against Defendants, says:

**NATURE OF THE CASE**

-1-

1.     This   case   is   brought   pursuant   to   the   Employee Retirement Income Security Income Act (ERISA), 29 U.S.C. §§ 1132 and 1140, to redress defendants' unlawful retaliation against PLAINTIFF for exercising his right to receive a retirement pension from IBEW Local Union No. 269 Pension Plan and failure to pay him retirement benefits.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over PLAINTIFF's ERISA claims under 28 U.S.C. §1331 and 29 U.S.C. §§1132(e) and (f).

3.     Venue in this district is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

4.     PLAINTIFF RICHARD T. AICHER, JR. ("PLAINTIFF") is a citizen of New Jersey and former employee of Defendant IBEW LOCAL UNION NO. 269 JOINT TRUST FUNDS OFFICE. He resided in New Jersey at all times relevant to this matter.

5.     At all times relevant hereto, defendant IBEW LOCAL UNION NO. 269 JOINT TRUST FUNDS OFFICE ("FUNDS OFFICE") was an office located in Trenton, New Jersey operated and maintained for the purposes of receiving, distributing, allocating, and otherwise administering employee contributions to the IBEW LOCAL UNION NO. 269 PENSION PLAN, IBEW LOCAL UNION NO. 269 ANNUITY FUND, IBEW LOCAL UNION NO. 269 HEALTH & WELFARE FUND, IBEW LOCAL

UNION NO. 269 SUPPLEMENTAL WELFARE FUND, and IBEW LOCAL UNION NO. 269 JOINT APPRENTICESHIP FUND (collectively the "TRUST FUNDS").

6.    Defendants BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 PENSION PLAN, BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 ANNUITY FUND, BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 HEALTH & WELFARE FUND, BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 SUPPLEMENTAL WELFARE FUND, and BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 JOINT APPRENTICESHIP FUND (collectively the "JOINT BOARD") established the JOINT FUNDS OFFICE and operated the JOINT FUNDS OFFICE at all times relevant hereto.

7.    Defendant IBEW LOCAL UNION NO. 269 PENSION PLAN was an ERISA governed employee pension plan in which PLAINTIFF was a participant.

**PLAINTIFF'S EMPLOYMENT WITH THE JOINT TRUST FUNDS OFFICE**

8.    From June 1992 until approximately July 2010, PLAINTIFF was employed as the Assistant Business Manager of IBEW Local Union No. 269 (the "Union").

9.    In May 2008, the JOINT BOARD named PLAINTIFF the Administrative Manager of the JOINT FUNDS OFFICE.

10.   PLAINTIFF held the Administrative Manager position concurrently with his position of Assistant Business Manager of the Union until July 2010.

11. He did not receive additional compensation for performing the role of Administrative Manager of the JOINT FUNDS OFFICE during the time he was employed as Assistant Business Manager of the Union.

12. In June 2010, the Union elected Steve Aldridge as Business Manager.

13. In July 2010, Aldridge eliminated PLAINTIFF'S position as Assistant Business Manager of the Union and also eliminated a director position in the JOINT FUNDS OFFICE.

14. In July 2010, Aldridge offered PLAINTIFF a paid position as Administrative Manager of the JOINT FUNDS OFFICE and plaintiff accepted.

15. PLAINTIFF'S compensation as Administrative Manager of the JOINT FUNDS OFFICE was approximately 30% less than his compensation had been when he was Assistant Business Manager.

**PLAINTIFF DECLARES HIS INTENT TO APPLY FOR A RETIREMENT PENSION**

16. At the time PLAINTIFF became employed as Administrative Manager of the JOINT FUNDS OFFICE in July 2010, he was eligible to receive a retirement pension from the IBEW Local Union No. 269 Pension Plan (the "PLAN").

17. In July 2010, PLAINTIFF disclosed his intention to exercise his right to receive a retirement pension from the Plan to Aldridge and the Assistant Business Manager, Wayne DeAngelo.

18.    DeAngelo told Aldridge that if PLAINTIFF began receiving his pension while continuing his employment as Administrative Manager for the JOINT FUNDS OFFICE, it would upset the "rank and file" and damage Aldridge's opportunity to be re-elected as Business Manager.

19.    On August 24, 2010, PLAINTIFF executed a "Waiver of Participation in the IBEW Local Union No. 269 Pension Plan" in which he waived his right to accrue future benefits in exchange for the right to begin receiving his retirement pension.

20.    Michael Scaraggi, Esq., the Plan's attorney, prepared the waiver.

21.    PLAINTIFF signed the waiver based on Scaraggi's advice.

22.    On August 27, 2010, PLAINTIFF met with the Trustees of the Plan and informed the Trustees of his intention to waive his right to accrue pension benefits, exercise his right to receive a retirement pension from the PLAN, and continue his employment as Administrative Manager of the JOINT FUNDS OFFICE.

23.    Later on August 27, 2010, PLAINTIFF submitted an application for an early retirement pension from the PLAN to I.E. Schaffer & Co., the administrator of the Plan, on the form required by the Plan.

## THE JOINT BOARD INTERFERES WITH PLAINTIFF'S RIGHT TO RECEIVE

## RETIREMENT PENSION BENEFITS

24.   On September 3, 2010, the JOINT BOARD held a Special Meeting.

25.   At the Special Meeting, "The Trustees [of the JOINT BOARD] discussed the subject of Richard T. Aicher, Jr. and his announced tentative plans to retire under the Local 269 Pension Plan, return to employment as an Administrative Manager, and continue to participate in the Local 269 Welfare Plan and Local 269 Annuity Plan but opt out of participation in the Local 269 Pension Plan."

26.   The Trustees of the JOINT BOARD further "discussed the implications of Mr. Aicher's proposal including perception of Local Union members and other Fund participants, cost of operation, and applicability or non-applicability of return to work rules."

27.   The "Trustees acknowledged the qualifications of Mr. Aicher as an Administrative Manager and based upon 'current circumstances' determined that Mr. Aicher either had to be a participant of all Benefit Funds including the Local 269 Pension Plan or retire."

28.   The Trustees also agreed that all fiscal operations of the Fund Office would again be reviewed on December 15, 2010.

29.  On September 3, 2010, after the Special Meeting, Scaraggi informed PLAINTIFF that the JOINT BOARD was giving him two options: he could either take his pension and forfeit his job or keep his job and forego his retirement pension.

30.  On September 27, 2010, PLAINTIFF objected to the JOINT BOARD'S response in correspondence to Scaraggi.

31.  Among other things, PLAINTIFF'S correspondence stated, "Accordingly, pursuant to the Claim Procedure set forth in the Pension Plan, I would like to request that this *de facto* denial of my request be put in writing and include the specific reasons relied upon by the Trustees for denying my pension request to receive my vested pension benefit while remaining employed as the Administrative Manager of the Funds Office.  Thereafter, I hope to be able to make a decision based upon a factual and objective analysis, rooted in the rules of the Plan and the law."

32.  On information and belief, based on the failure of I.E. Schaeffer & Co. to process PLAINTIFF'S application for a retirement pension, at some point after August 27, 2010, the JOINT BOARD instructed I.E. Schaeffer & Co. not to process PLAINTIFF'S claim for benefits.

33.  In December 2010, Aldrich retaliated against PLAINTIFF by instructing payroll not to pay PLAINTIFF for vacation time he intended to take.

## DEFENDANTS RETALIATE AGAINST PLAINTIFF FOR PURSUING HIS CLAIM

### FOR RETIREMENT PENSION BENEFITS

34. On or about December 15, 2010, the JOINT FUNDS BOARD reviewed the fiscal operations of the JOINT FUNDS OFFICE and did not eliminate PLAINTIFF'S position as Administrative Manager of the JOINT FUNDS OFFICE.

35. On November 18, 2011, eleven months later, PLAINTIFF attended the quarterly meeting of the JOINT BOARD.

36. The fiscal operations of the JOINT FUNDS OFFICE were discussed.

37. There was no discussion of eliminating the PLAINTIFF'S Administrative Manager position.

38. On November 23, 2011, PLAINTIFF, through counsel, wrote to the Trustees of the PLAN and requested a written determination of his August 27, 2010 claim for a retirement pension.

39. PLAINTIFF further indicated that if he did not receive a written determination within ten (10) days, he would construe the silence as a denial and file an appeal; and, if the appeal were ignored, he would file suit.

40. On November 28, 2011, Scaraggi responded on behalf of the PLAN and indicated that "while I may not be able to provide to you a written position within ten days of November 23, 2011, a detailed position will be provided."

-8-

41. On November 28, 2011, through his counsel, PLAINTIFF reiterated that if he did not receive a timely determination of his claim, he would file an appeal.

42. On December 14, 2011, in response to PLAINTIFF'S inquiry as to whether a written response to his claim would be forthcoming, Scaraggi told PLAINTIFF'S counsel that while he could not disclose specifics, PLAINTIFF would receive a response the next day.

43. On December 15, 2011, shortly after 8:00 a.m., when PLAINTIFF arrived at work, he was terminated.

44. Scaraggi, Aldridge and DeAngelo were present.

45. Scaraggi handed PLAINTIFF a termination letter prepared on his letterhead and signed by him, which stated in pertinent part:

> The Trustees of the IBEW Local 269 recently conducted a meeting to review the fiscal operations of the Employee Benefits Funds' Office. After consideration, the Trustees voted to terminate the position of Administrative Manager effective January 1, 2012.

46. PLAINTIFF was not aware of any meeting of the JOINT BOARD to review the fiscal operations of the JOINT FUNDS OFFICE between November 18, 2011 and December 15, 2011.

47. The JOINT BOARD had not requested any information about the fiscal operations of the JOINT FUNDS OFFICE at any time after the November 18, 2011 quarterly meeting.

48.    The reason for PLAINTIFF'S termination Scaraggi stated in the December 15, 2011 letter was a pretext for unlawful retaliation.

49.    Defendants terminated PLAINTIFF'S employment because he hired a lawyer and indicated that he would prosecute his claim for a retirement pension.

## DEFENDANTS FAIL TO PAY PLAINTIFF THE RETIREMENT BENEFITS TO WHICH HE IS ENTITLED

50.    On January 3, 2012, I.E. Shaffer informed PLAINTIFF that his August 27, 2010 application for pension benefits had been approved effective January 1, 2012.

51.    I.E. Shaffer did not set forth a reason for approving the pension application effective January 1, 2012 rather than September 1, 2010.

52.    On January 25, 2012, PLAINTIFF appealed the denial of his claim for pension benefits between September 1, 2010 and December 31, 2011.

53.    PLAINTIFF'S appeal claimed that as of September 1, 2010, he qualified for an early retirement pension based on his age and years of service.

54.    PLAINTIFF'S appeal further claimed that as of September 1, 2010, he was not subject to any disqualifications under the Plan.

55.  On February 29, 2012, the BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 PENSION PLAN denied PLAINTIFF'S claim for retroactive pension benefits.

56.  In the denial letter, the BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 PENSION PLAN did not deny that as of September 1, 2010, PLAINTIFF qualified for an early retirement pension based on his age and years of service.

57.  In the denial letter, the BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 PENSION PLAN did not claim that prior to January 1, 2012, PLAINTIFF was disqualified from receiving pension benefits because of his continued employment as Administrative Manager or any other reason.

58.  In the denial letter, the BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 269 PENSION PLAN denied PLAINTIFF'S claim for retroactive benefits based solely on its view that he was estopped from claiming retroactive pension benefits.

**THE COURT REMANDS PLAINTIFF'S CLAIM FOR RETROACTIVE BENEFITS**

59.  In November 2013, the parties cross-moved for summary judgment on the claim for retroactive pension benefits plaintiff pled in Counts Three and Four of the Complaint.

60.  On October 20, 2014, the United States District Court for the District of New Jersey denied the motions and remanded plaintiff's claim for retroactive pension benefits to the Board of Trustees of defendant IBEW Local Union No. 269 Pension Plan.

61.   The Court remanded the claim to the Trustees to determine whether plaintiff's employment as Administrative Manager of the Joint Funds Office disqualified him from pension benefits under Article VI(6)(b) of the Plan.

62.   Article VI(6)(b) of the Plan states:

> If a Pensioner accepts employment in the electrical construction industry, pension payments accrued after January 1, 2002 and payable prior to attainment of age 62 shall immediately cease as of the first of the month next following the date of return to work, except if employed as a teacher/instructor of an IBEW approved training program or as an electrical inspector.

63.   The Court ruled that on remand, the Trustees should address the facts on which plaintiff had relied to support his contention that his employment as Administrative Manager of the Joint Funds Office was not "in the electrical construction industry," including: deposition testimony from one Trustee, who testified that plaintiff's employment was not in the electrical construction industry as the Plan defined that term; testimony from another Trustee who testified that as Administrative Manager of the Joint Funds Office, plaintiff performed the same function as the Plan's third-party administrator; and, evidence that two other pensioners received benefits while working for electrical contractors in administrative positions.

**THE TRUSTEES UNLAWFULLY DENY PLAINTIFF'S CLAIM FOR RETROACTIVE**

**PENSION BENEFITS**

64. On June 29, 2015, following the denial of plaintiff's motion for reconsideration, plaintiff submitted a claim letter to the Trustees.

65. Plaintiff asserted that Article VI(6)(b) does not preclude his claim for retroactive pension benefits for three reasons:

(1) Article VI(6)(b) is unenforceable because it violates ERISA's non-forfeiture provision;

(2) Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the "electrical construction industry;" and,

(3) Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the same "trade or craft" as his prior employment as (a) an electrician and (b) Assistant Business Manager of the Local Union No. 269.

66. By letter dated September 10, 2015, the Trustees denied plaintiff's claim.

67. The Trustees failed to address plaintiff's contention that Article VI(6)(b) is unenforceable because it violates ERISA's non-forfeiture provision.

68. The Trustees also failed to address plaintiff's argument that whether or not his position as Administrative Manager of the Joint Funds Office was "in the electrical construction industry," he was not disqualified from pension

benefits because his employment as Administrative Manager was not in the same "trade or craft" as either his prior employment as a union electrician or his prior employment as Assistant Business Manager of the Union.

69.   The Trustees denied plaintiff's claim for retroactive pension benefits based on their determination that his position as Administrative Manager of the Joint Funds Office was "in the electrical construction industry."

70.   However, the Trustees ignored the Court's directive in its October 20, 2014 Opinion and failed to address the evidence on which plaintiff had relied at summary judgment and again in his June 29, 2015 claim letter, including but not limited to the deposition testimony from one Trustee, who testified that plaintiff's employment was not in the electrical construction industry as the Plan defined that term; testimony from another Trustee who testified that as Administrative Manager of the Joint Funds Office, plaintiff performed the same function as the Plan's third-party administrator; and, evidence that two other pensioners received benefits while working for electrical contractors in administrative positions.

71.   The Trustees based their determination that plaintiff's employment as Administrative Manager of the Joint Funds Office was "in the electrical construction industry" on

its finding that plaintiff's employment was "Plan-related employment."

72. The term, "Plan-related employment" does not appear in the Plan.

73. The term, "Plan-related employment", has no legal significance.

74. The term, "Plan-related employment" does not describe employment that is limited to "the electrical construction industry."

75. In fact, in the Plan's definition of hours of service, the Plan distinguishes between hours for which an employee is paid for the "performance of duties as an electrical worker" and hours for which the employee is paid for "reasons other than the performance of duties as an electrical worker…"

76. The Trustees' denial of plaintiff's claim for retroactive pension benefits was arbitrary and capricious, erroneous as a matter of law, and unlawful under ERISA.

## PLAINTIFF IS ENTITLED TO BENEFITS BECAUSE HE HAD VESTED IN HIS PENSION AND ARTICLE VI(6)(b) VIOLATES ERISA'S NON-FORFEITURE PROVISION

77. Whether Article VI(6)(b) is enforceable under ERISA or violates ERISA's non-forfeiture provision is a question of law subject to de novo review.

78. Under 29 U.S.C. § 1053(a)(3)(B)(ii,) a forfeiture provision in a multi-employer ERISA-governed benefit plan is valid only if it provides for the suspension of accrued benefits where the employee works "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced." See also 29 C.F.R. § 2530.203-3(c).

79. Article VI(6)(b) of the Plan is not enforceable because it provides that pension benefits are forfeit if "a Pensioner accepts employment in the electrical construction industry" regardless of whether he is working in the same industry, same trade or craft or in the same geographic area as when he accrued his benefit.

**PLAINTIFF IS ENTITLED TO BENEFITS BECAUSE HE HAD VESTED IN HIS PENSION AND HIS EMPLOYMENT AS ADMINISTRATIVE MANAGER WAS NOT IN THE SAME INDUSTRY AS HIS PRIOR EMPLOYMENT**

80. Whether plaintiff's employment as Administrative Manager of the Joint Funds Office was in the same industry as his prior employment as (a) a union electrician or (b) Assistant Business Manager of IBEW Local Union No. 269 is a question of law subject to de novo review.

81. Plaintiff's employment as an electrician was in the electrical construction industry.

82. Plaintiff's employment as Assistant Business Manager of the Union was in the labor relations industry and was not in the electrical construction industry.

83. Plaintiff's employment as Administrative Manager was in the employee benefits administration industry and was not in either the electrical construction industry or the labor relations industry.

84. Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the same industry as either his employment as Assistant Business Manager of the Union or as a Union electrician.

### PLAINTIFF'S EMPLOYMENT AS ADMINISTRATIVE MANAGER WAS NOT "IN THE ELECTRICAL CONSTRUCTION INDUSTRY"

85. Plaintiff's position as Assistant Business Manager of the Union was not "in the electrical construction industry."

86. One Trustee admitted in sworn testimony that plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the electrical construction industry.

87. Prior to denying plaintiff's claim for retroactive pension benefits, the Plan had paid benefits to at least two pensioners who had collected a pension while working in an administrative capacity for an electrical contractor.

88. And, on four occasions prior to the filing of this lawsuit, the Trustees failed to dispute plaintiff's assertion

that his employment as Administrative Manager of the Joint Funds Office was not in the electrical construction industry.

89. The terms of the CBA between the Union and NECA, and the relevant provisions of the IBEW Constitution, are clear that plaintiff's employment as Administrative Manager of the Joint Funds Office did not fall within the scope of the electrical construction industry.

90. Article 9.2 of the CBA states that the "IBEW has jurisdiction over the installation, operating, maintenance and repair of all electrical wiring and equipment."

91. Article 9.3 of the CBA between the Union and NECA contains the "SCHEDULE OF WORK COMING UNDER THE JURISDICTION OF THE IBEW."

92. None of plaintiff's job duties as Administrative Manager of the Joint Funds Office appears in the SCHEDULE OF WORK COMING UNDER THE JURISDICTION OF THE IBEW in Article 9.3 of the CBA.

93. Moreover, none of plaintiff's job duties as Administrative Manager of the Joint Funds Office appears in the Article XXVII of the IBEW Constitution, captioned, "Jurisdiction."

94. The CBA between the Union and NECA also states that, "Work referred to in this Agreement is inside electrical work as defined in Article XXVI, Section 5 of the IBEW Constitution."

95.   Article XXVI, Section 5, of the IBEW Constitution defines "Inside Electrical Workers" as including:

> Wiremen, technicians, fixture men, crane men, crane repair men, signal men, load dispatchers, trouble men, switchboard operators and erectors, operators of electrical apparatus when generating, supplying or furnishing electricity for other than distributing companies. Inside cable splicers, picture machine operators when the machines are used for educational or advertisement purposes other than theatrical.

> Inspectors, shop men, bridge operators, crane operators, meter testers and installers, inside battery men, fire and burglar alarm installers and repair men, marine electrical workers, glass tube benders and pumpers.

96.   Plaintiff's position as Administrative Manager of the Joint Funds Office was not included in the definition of Inside Electrical Worker.

97.   Relevant statutory and regulatory provisions also show that plaintiff's employment as Administrative Manager of the Joint Funds Office was not in "the electrical construction industry."

98.   As Administrative Manager of the Joint Funds Office, plaintiff did not engage in the business of contracting to install, erect, repair or alter electrical equipment for the generation, transmission or utilization of electrical energy, and therefore did not qualify as an "Electrical contractor" as that term is defined by N.J.S.A. 45:5A-2.

-19-

99. As Administrative Manager of the Joint Funds Office, plaintiff did not engage in any activities requiring a license and business permit under N.J.A.C. 13:31-3.8.

## PLAINTIFF IS ENTITLED TO RETROACTIVE PENSION BENEFITS BECAUSE HIS EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE WAS NOT IN THE SAME TRADE OR CRAFT AS HIS PRIOR EMPLOYMENT

100. Whether plaintiff's employment as Administrative Manager of the Joint Funds Office was in the same trade or craft as his prior employment as (a) a union electrician or (b) Assistant Business Manager of IBEW Local Union No. 269 is a question of law subject to de novo review.

101. Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the same trade or craft as his prior employment as (a) a union electrician or (b) Assistant Business Manager of IBEW Local Union No. 269.

102. Two jobs are considered in the same trade or craft if they utilize significantly the same skills. 29 C.F.R. § 2530.203-3(c)(2)(ii).

103. From 1971 to 1992, plaintiff worked as an electrician for employers who were party to the collective bargaining agreement between the Union and the Mercer County Division of the Southern New Jersey Chapter of the National Electrical Contractors Association (NECA).

104. As a union electrician, plaintiff performed electrical work.

105. From 1992 to 2010, plaintiff was employed by the Union as Assistant Business Manager and reported to the Business Manager.

106. Plaintiff's job duties as Assistant Business Manager included organizing, representing the Union in grievances, and representing the Union in contract negotiations with NECA.

107. From 2010 to December 2011, plaintiff was employed as the Administrative Manager of the Joint Funds Office.

108. As the full-time, paid Administrative Manager of the Joint Funds Office, plaintiff assumed the day to day responsibilities of running the office.

109. Plaintiff's job duties as Administrative Manager of the Joint Funds Office were purely administrative.

110. His job duties included supplying information requested by the accounting and financial professionals who handled the funds' accounting, audits and investments, collecting delinquent contributions from participating employers and responding to questions from plan participants.

111. As Administrative Manager of the Joint Funds Office, plaintiff did not perform estimates, supervise electricians or perform electrical work.

112. As Administrative Manager of the Joint Funds Office, plaintiff did not organize workers, handle grievances or participate in contract negotiations.

113. Plaintiff utilized different skills in the Administrative Manager position than he used in his prior employment.

114. As Administrative Manager of the Joint Funds Office, plaintiff performed administrative duties, which were different in nature from the electrical work he performed as an electrician and the labor relations work he performed as Assistant Business Manager.

## PLAINTIFF EXHAUSTS HIS ADMINISTRATIVE REMEDIES

115. Plaintiff has exhausted his administrative remedies.

116. On September 22, 2015, defendants admitted that plaintiff had exhausted his administrative remedies.

## COUNT ONE

117. PLAINTIFF repeats the allegations in the prior paragraphs as set forth at length herein.

118. Defendants terminated PLAINTIFF'S employment as Administrative Manager because he exercised his right to a retirement pension under the PLAN.

119. The Plan is an ERISA governed employee pension plan.

120. Defendants violated section 510 of ERISA, 29 U.S.C. s. 1140.

-22-

121. PLAINTIFF'S rights are enforceable pursuant to 29 U.S.C. s. 1132.

WHEREFORE, pursuant to 29 U.S.C. Section 1132(a)(3), PLAINTIFF demands judgment against defendants for appropriate equitable relief, including but not limited to back pay, front pay, attorney's fees and such other relief as the Court deems equitable and just.

## COUNT TWO

122. PLAINTIFF repeats the allegations in the prior paragraphs as set forth at length herein.

123. Defendants terminated PLAINTIFF because he threatened to appeal the *de facto* denial of his claim for benefits and file suit if his appeal of his claim for benefits from the Plan was ignored or denied.

124. Defendants violated section 510 of ERISA, 29 U.S.C. s. 1140.

125. PLAINTIFF'S rights are enforceable pursuant to 29 U.S.C. s. 1132.

WHEREFORE, pursuant to 29 U.S.C. Section 1132(a)(3), PLAINTIFF demands judgment against defendants for appropriate equitable relief, including but not limited to back pay, front pay, attorney's fees and such other relief as the Court deems equitable and just.

## COUNT THREE

126. PLAINTIFF repeats the allegations of the prior paragraphs as if set forth at length herein.

127. Defendants interfered with PLAINTIFF'S attempt to exercise his right to receive a retirement pension from the Plan.

128. Among other things, defendants discouraged PLAINTIFF from obtaining a written determination of his claim for a retirement pension and appealing the PLAN Trustees' failure to grant or deny his application for a retirement pension.

129. Defendants also instructed the PLAN Administrator, I.E. Schaeffer & Co., not to process PLAINTIFF'S claim for benefits.

130. As a result of defendants' interference, PLAINTIFF did not receive his retirement benefits until January 2012, approximately 16 months after he applied for such benefits.

WHEREFORE, pursuant to 29 U.S.C. s. 1132(a)(3), PLAINTIFF demands judgment against defendants for appropriate equitable relief, including but not limited to a constructive trust on the unpaid benefits improperly retained by the PLAN, attorney's fees and such other relief as the Court deems equitable and just.

## COUNT FOUR

131. PLAINTIFF repeats the allegations of the prior paragraphs as if set forth at length herein.

132. PLAINTIFF was entitled to a retirement pension from the PLAN when he applied on August 27, 2010.

133. Defendants improperly denied PLAINTIFF'S claim for a retirement pension.

134. The denial was unlawful.

135. PLAINTIFF exhausted his administrative remedies.

WHEREFORE, under 29 U.S.C. Section 1132(a)(1)(B), PLAINTIFF demands judgment against Defendants for unpaid benefits, to enforce his rights under the terms of said plans and clarify his rights to future benefits under the terms of the plan, for attorney's fees and such other relief as the Court deems equitable and just.

## CERTIFICATION

I hereby certify that this matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

McMORAN O'CONNOR & BRAMLEY
A Professional Corporation
Ramshorn Executive Centre
Bldg. D. Suite D-1
2399 Hwy 34
Manasquan, New Jersey 08736
(732) 223-7711
Attorneys for Plaintiff,
  Richard T. Aicher, Jr.

By: _Michael F. O'Connor_
    Michael F. O'Connor

Dated:    September 29, 2015