**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

RICHARD T. AICHER, JR.,       :

        Plaintiff,       :

                :    Civil Action No. 3:12-cv-01781-FLW-TJB

        vs.       :

IBEW LOCAL UNION NO. 269 JOINT:   **Return Date: November 7, 2016**
FUNDS OFFICE et als.,         **Oral Argument Requested**

        Defendants.       :

                :

---

**PLAINTIFF RICHARD T. AICHER, JR.'S BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AND ATTORNEY'S FEES**

---

McMORAN O'CONNOR & BRAMLEY, PC
Ramshorn Executive Centre
2399 Highway 34 Suite D-1
Manasquan, New Jersey 08736
(732) 223-7711
(732) 223-7750
moconnor@mcmoranlaw.com

Attorneys for Plaintiff,
Richard T. Aicher, Jr.

On the brief:

    Michael F. O'Connor

TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS ........................................ i

TABLE OF AUTHORITIES .................................. iii

INTRODUCTION ............................................. 1

PRELIMINARY STATEMENT .................................. 1

STATEMENT OF FACTS ..................................... 4

  A.   PLAINTIFF'S PRE-2010 EMPLOYMENT ................... 4

  B.   THE JOINT BOARD HIRES PLAINTIFF AS ADMINISTRATIVE
  MANAGER OF THE JOINT FUNDS OFFICE ..................... 4

  C.   PLAINTIFF'S JOB AS ADMINISTRATIVE MANAGER WAS
  ENTIRELY DIFFERENT THAN HIS PRIOR JOBS AS AN
  ELECTRICIAN AND ASSISTANT BUSINESS MANAGER OF
  THE UNION  ........................................... 5

  D.   PLAINTIFF WAS ELIGIBLE FOR A NORMAL RETIREMENT
  PENSION WHEN HE BEGAN EMPLOYMENT AS ADMINISTRATIVE
  MANAGER OF THE JOINT FUNDS OFFICE. ................... 7

  E.   PLAINTIFF APPLIES FOR A PENSION. .................. 8

  F.   PLAINTIFF INFORMS THE JOINT BOARD OF HIS INTENTION
  TO BEGIN TAKING HIS PENSION. ........................ 10

  G.   THE JOINT BOARD INTERFERES WITH PLAINTIFF'S RIGHT
  TO RECEIVE RETIREMENT PENSION BENEFITS. ............. 12

  H.   THE TRUSTEES FAIL TO RESPOND TO PLAINTIFF'S CLAIM
  FOR BENEFITS ........................................ 14

  I.   DEFENDANTS RETALIATE AGAINST PLAINTIFF FOR PURSUING
  HIS CLAIM FOR PENSION BENEFITS. ..................... 16

  J.   DEFENDANTS FAIL TO PAY PLAINTIFF THE RETIREMENT
  BENEFITS TO WHICH HE IS ENTITLED. ................... 17

  K.   THE COURT REMANDS THE MATTER TO THE PENSION PLAN
  TRUSTEES. ........................................... 19

i

L.  THE TRUSTEES UNLAWFULLY DENY PLAINTIFF'S CLAIM FOR RETROACTIVE PENSION BENEFITS. ........................21

LEGAL ARGUMENT ........................................27

THE COURT SHOULD GRANT SUMMARY JUDGEMENT TO PLAINTIFF ON COUNT FOUR OF HIS AMENDED COMPLAINT AND AWARD HIM THE VALUE OF HIS CLAIM FOR RETROACTIVE PENSION BENEFITS

A.  SUMMARY JUDGMENT STANDARD ........................23

B.  ERISA STANDARDS ..................................24

    1. Plaintiff has standing to bring his claim. .....24

    2. Defendants are proper parties to the case. .....24

    3. Standard of review. ...........................25

C.  PLAINTIFF WAS ELIGIBLE FOR PENSION BENEFITS WHEN HE SUBMITTED HIS CLAIM ..................................27

D.  THE RETURN TO WORK PROVISION OF THE PLAN VIOLATES ERISA'S NON-FORFEITURE RULE ..........................27

E.  PLAINTIFF'S EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE WAS NOT EMPLOYMENT IN THE "ELECTRICAL CONSTRUCTION INDUSTRY" ...................28

    1. defendants have admitted that plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the electrical construction industry. ..........................................28

    2. defendants have failed to demonstrate that plaintiff's employment as Administrative Manager of the Joint Funds Office was in the "electrical construction industry". ........................................30

F.  PLAINTIFF'S EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE WAS NOT EMPLOYMENT IN THE SAME TRADE OR CRAFT AS HIS PRIOR EMPLOYMENT ..............31

G.  THE COURT SHOULD AWARD PLAINTIFF THE VALUE OF HIS RETROACTIVE BENEFIT PLUS INTEREST ...................34

POINT II

THE COURT SHOULD ENTER JUDGMENT ON COUNT THREE OF THE
COMPLAINT .............................................. 35

POINT III

THE COURT SHOULD GRANT PLAINTIFF REASONABLE ATTORNEY'S
FEES .................................................... 36

CONCLUSION ............................................. 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anthuis v. Colt Industries Operating Corp.,
  971 F.2d 999 (3d Cir. 1992)................................37

Bruch v. Firestone Tire & Rubber Company,
  828 F.2d 134 (3d Cir. 1987), *affirmed in part,
  reversed in part on other grounds*, 489 U.S. 101
  (1989)....................................................26

Brytus v. Spang & Co.,
  203 F.3d 238 (3d Cir.2000)................................37

Metropolitan Life Ins. Co. v. Glenn,
  554 U.S. 105 (2008)......................................26

Cappuccio v. Pfizer, Inc.,
  2007 WL 2593704 (E.D. Pa)................................25

Dependahl v. Falstaff Brewing Corp.,
  653 F.2d 1208 (8th Cir.) cert. den. 454 U.S. 968
  (1981)....................................................35

Eisenreich v. Minneapolis Retail Meat Cutters and Food
  Handlers Pension Plan,
  574 F.3d 644 (8th Cir. 2009)..........................31, 32

Gritzer v. CBS, Inc.,
  275 F.3d 291 (3d Cir. 2002)..............................32

Hannington v. Sun Life & Health Ins. Co.,
  711 F3d. 226 (1st Cir. 2013).............................26

Hardtke v. Exide Corporation,
  821 F.Supp. 1021 (E.D. Pa 2003)..........................35

Holmes v. Pension Plan of Bethlehem Steel Corp.,
  214 F.3d 124 (3d Cir. 2000)..............................34

Johanssen v. Distr. No. 1 - Pac. Const. Dist. MEBA
  Pension Plan,
  292 F.3d 159 (4th Cir. 2002) ................................ 26

Jones v. Western Conference of Teamsters Pension Plan,
  2008 WL 3892055 (E.D.Cal August 21, 2008) at *4 ........... 33

Levinson v. Weintraub,
  215 N.J. Super. 273 (App. Div. 1987) ...................... 28

Massachusetts v. Morash,
  490 U.S. 108 (1989) ....................................... 24

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986) ....................................... 24

McPherson v. Employees' Pension Plan of Am. Re-Ins.
  Co., Inc.,
  33 F.3d 253 (3d Cir.1994) ................................. 36

Miller v. American Airlines, Inc.,
  632 F.3d 837 (3d Cir. 2011) ............................... 26

Musmeci v. Schwegmann Giant Super Markets, Inc.,
  332 F.3d 339 (5th Cir. 2003) .............................. 25

Pazos v. Lyondell Chemical Company,
  2001 WL 1667300 (E.D. Pa.) ................................ 34

Pell v. E.I. DuPont De Nemours & Company, Inc.,
  539 F.3d 292 (3d Cir. 2008) ............................... 36

Riley v. Sun Life & Health Ins. Co.,
  657 F.3d 739 (8th Cir. 2011) .............................. 26

Skretvedt v. E.I. DuPont De Nemours,
  372 F.3d 193 (3d Cir. 2004) ............................... 36

Smith v. CMTA-IAM Pension Trust,
  654 F.2d 650 (9th Cir. 1981) ........................... 28, 32

Thomson v. I.A.M. National Pension Fund,
  616 F.2d 343 (7th Cir. 1980) .............................. 28

U.S. v. Lafferty,
  503 F.3d 293 (3d Cir. 2007) ............................... 30

<u>Ursic v. Bethlehem Mines</u>,
    719 F.2d 670 (3d Cir. 1983) ................................. 37

<u>Vaughn v. Metro. Life Ins. Co.</u>,
    87 F.Supp.2d 421 (E.D. Pa. 2000) ......................... 25

<u>Weil v. Ret. Plan Admin. Comm. of Terson Co.</u>,
    933 F2d. 1045 (2d Cir. 1990) ............................. 26

**Statutes**

28 U.S.C. § 1961 .......................................... 35

29 U.S.C. .................................................. 24

29 U.S.C. § 1002(1) ....................................... 24

29 U.S.C. § 1002(21)(A) ................................... 25

29 U.S.C. § 1053(a)(3)(B)(ii) ............................. 27

29 U.S.C. § 1132(a)(1)(B) ................................. 34

Employee Retirement Income and Security Act, 29 U.S.C.
    §§ 1001-1461.......................................*passim*

**Other Authorities**

29 C.F.R. § 2530.203-3(c) ................................. 28

29 C.F.R. § 2530.203-3(c)(2)(ii) .......................... 32

Fed. R. Civ. P. (30)(b)(6) ................................ 23

Fed. R. Civ. P. 56(c) ..................................... 24

Local Civil Rule 54.2 ..................................... 39

## INTRODUCTION

Plaintiff Richard T. Aicher, Jr. respectfully submits this brief in support of his motion for partial summary judgment on Counts Three and Four of the Amended Complaint. Count Three asserts that defendants violated ERISA by interfering with his claim for pension benefits from the IBEW Local Union No. 269 Pension Plan (the "Plan"). Count Four asserts that defendants violated ERISA by unlawfully denying his claim for pension benefits under the Plan.

## PRELIMINARY STATEMENT

The defendants in this matter violated ERISA by (1) directing the third-party administrator of the IBEW Local Union No. 269 Pension Plan to ignore plaintiff's pension application for fourteen months (2) terminating plaintiff's employment in retaliation for asserting his ERISA-protected rights, including his right to have his pension claim decided by the Trustees, and (3) denying plaintiff's claim for retroactive pension benefits on grounds this Court previously found were unlawful on October 20, 2014, when the Court denied defendants' summary judgment motion on Count Four of the Complaint.

At that time, the Court remanded plaintiff's claim for retroactive pension benefits to the Trustees to develop a record on a *post hoc* justification for denying plaintiff's claim, which the defendants had raised for the first time in their summary

1

judgment brief without any record support:  that plaintiff's employment as Administrative Manager of the Joint Funds Office disqualified plaintiff for pension benefits under the Plan's return-to-work rule, Article VI(6)(b), because that employment was in the "electrical construction industry."

In its Opinion remanding plaintiff's claim for retroactive pension benefits to the Trustees, the Court specifically directed the defendants to address admissions defendants had made during discovery that plaintiff's employment as Administrative Manager of the Joint Funds Office was not employment in "the electrical construction industry." The admissions included (1) deposition testimony from Trustee Ronald Warr, who expressly testified that plaintiff's employment was not in the electrical construction industry; (2) deposition testimony from Trustee Wayne DeAngelo, who testified that in his role as Administrative Manager of the Joint Funds Office, plaintiff performed the function of a benefits administrator; and, (3) the Plan's practice of paying benefits to pensioners who worked in administrative positions for electrical contractors.

On remand, the Trustees have ignored the Court's directive. In their September 10, 2015 letter denying plaintiff's claim for retroactive pension benefits, the Trustees failed to address either Trustees' testimony or the Plan's practice of paying

2

pensioners who worked in administrative positions for electrical contractors. Rather, the Trustees merely repeated a reason for denying plaintiff's claim — that he worked in "Plan-related employment" in which he accrued pension credits — which this Court previously rejected.

Under these circumstances, the Court should grant summary judgment to plaintiff on his claim for retroactive pension benefits. First, the overly broad Plan provision on which defendants belatedly rely violates ERISA's non-forfeiture rule because it authorizes the Plan to suspend benefits to a pensioner who accepts employment in the "electrical construction industry" regardless of his trade or craft or geographical area.

Second, defendants have admitted that plaintiff's position as Administrative Manager of the Joint Funds Office was not in the "electrical construction industry." The same evidence that was undisputed on the parties' initial summary judgment motion remains undisputed today.

Third, under ERISA, a forfeiture provision is only enforceable where the return to work is in employment in the same trade or craft as the prior employment. Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the "same trade or craft" as his prior employment as an electrician and Assistant Business Manager of the Union. Summary judgment should be granted.

3

## STATEMENT OF FACTS

### A. PLAINTIFF'S PRE-2010 EMPLOYMENT

From 1971 to 1992, plaintiff worked as an electrician for employers who were party to the collective bargaining agreement ("CBA") between IBEW Local Union No. 269 (the "Union") and the Mercer County Division of the Southern New Jersey Chapter of the National Electrical Contractors Association (NECA). Plaintiff's Answer to Interrogatory No. 4 (Certification of Michael F. O'Connor at Exhibit 3).

From 1992 to 2010, plaintiff was employed by the Union as Assistant Business Manager and reported to the Business Manager. Transcript of Deposition of Richard T. Aicher (O'Connor Cert., Ex. 4) at 15:8-16:8. His job duties included organizing, representing the Union in grievances, and representing the Union in contract negotiations with NECA. Id. at 16:9-18:1; see also July 1, 2016 Transcript of Deposition of Wayne DeAngelo (DeAngelo II)(O'Connor Cert., Ex. 33) at 108:19-109:9.

### B. THE JOINT BOARD HIRES PLAINTIFF AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE

The Joint Board of Trustees of the Union's benefit plans established the Joint Funds Office to administer employee contributions to the Union's benefit plans. [1] Amended Complaint

---

[1] The Joint Funds Office did not act as the administrator of the Pension Plan. A third-party administrator, I.E. Shaffer, performed that function.

4

(O'Connor Cert., Ex. 1) and Answer to Amended Complaint (O'Connor Cert., Ex. 2) at ¶¶5-6. The Director of the Joint Funds Office was responsible for the day-to-day operations of the office. Aicher Tr. at 31.

In June 2010, Stephen Aldrich, the Union's newly elected Business Manager, informed plaintiff that he intended to eliminate plaintiff's position as Assistant Business Manager, terminate the Director of the Joint Funds Office, and appoint plaintiff the full-time Administrative Manager of the Joint Funds Office. Aicher Tr. 28:8-29:18. On June 28, 2010, at a meeting of the Joint Board of Trustees of the Union benefit plans, the Joint Board formally eliminated the position of Director of the Joint Funds Office. After it eliminated the Director position, the Joint Board offered plaintiff a paid full-time position as Administrative Manager of the Joint Funds Office at the same rate of pay as the former Director. Complaint at ¶¶5-6, 12-14; Defendants' Answer at ¶¶5-5, 13-14. Plaintiff, whose position as Assistant Business Manager was eliminated, accepted the job and started on July 12, 2010. Aicher Tr. at 32:8-11, 62:25-63:6; Plaintiff's Answer to Interrogatory Nos. 2-4, 6 (O'Connor Cert. Ex. 3).

C. **PLAINTIFF'S JOB AS ADMINISTRATIVE MANAGER WAS ENTIRELY DIFFERENT THAN HIS PRIOR JOBS AS AN ELECTRICIAN AND ASSISTANT BUSINESS MANAGER OF THE UNION**

5

As Administrative Manager of the Joint Funds Office, plaintiff assumed the day to day responsibilities of running the office, which had been the job of the Office's Director. Aicher Tr. at 31:16-23. His job duties were managerial and administrative. The duties included supplying information requested by the accounting and financial professionals who handled the funds' accounting, audits and investments, collecting delinquent contributions from participating employers and responding to questions from plan participants. Id. at 51:4-57:10; see also Plaintiff's Answer to Interrogatory No. 2 (O'Connor Cert., Ex. 3).

As Administrative Manager of the Joint Funds Office, plaintiff did not perform estimates, supervise electricians or perform electrical work. Transcript of Deposition of Ronald Warr (O'Connor Cert., Ex. 9). He did not organize workers, handle grievances or participate in contract negotiations. Plaintiff's Answer to Interrogatory No. 2. The job plaintiff performed as Administrative Manager of the Joint Funds Office was entirely different than his prior jobs as an electrician and Assistant Business Manager of the Union.

None of plaintiff's job duties as Administrative Manager appears in the SCHEDULE OF WORK COMING UNDER THE JURISDICTION OF THE IBEW in Article 9.3 of the CBA. O'Connor Cert., Ex. 27; DeAngelo II at 112:3-114:13. As Plan Trustee Ronald Warr

admitted, plaintiff's job was not part of the "electrical construction industry" as the IBEW Local Union No. 269 Pension Plan (the "Plan") defined that term.   Warr Tr. at 28:12-15. Rather, as Administrative Manager of the Joint Funds Office, plaintiff performed the same function for the union welfare benefit plans that I.E. Shaffer, the third party administrator of the Pension Plan, performed for the Plan. Transcript of Deposition of Wayne DeAngelo (O'Connor Cert., Ex. 11) at 33:3-8.

**D. PLAINTIFF WAS ELIGIBLE FOR A NORMAL RETIREMENT PENSION WHEN HE BEGAN HIS EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE**

Plaintiff was a participant in the IBEW Local Union No. 269 Pension Plan (the "Plan"), an ERISA governed pension plan, in both the electrician and Assistant Business Manager positions. Complaint at ¶¶7-8 (O'Connor Cert., Exhibit 1); Defendants' Answer at ¶¶7-8 (O'Connor Cert., Exhibit 2) (Doc. 16); IBEW Local Union No. 269 Pension Plan (O'Connor Cert., Exhibit 12); Plaintiff's Answer to Defendants First Set of Interrogatories. Aicher Tr. at 10:21-11:8, 12:12-21, 15:12-24.

Article IV(2) of the Plan states that a participant is eligible for a Normal Retirement Pension when the combination of his age and years of service exceed 85. As of January 1, 2004, based on his age of fifty-two and his thirty-three years of credited service under the Plan, plaintiff had a 100% vested, non-forfeitable right to his accrued pension benefit.

7

Plaintiff's Answer to Defendants' Interrogatory No. 1; Plan at Article IV(2). He was therefore eligible for a Normal Retirement Pension at the time he became employed as Administrative Manager of the Joint Funds Office in July 2010. Plan at Article IV(2); Complaint at ¶16; Defendants' Answer at ¶16.

**E. PLAINTIFF APPLIES FOR A PENSION**

Plaintiff's compensation as Administrative Manager of the Joint Funds Office was approximately 30% less than his compensation had been when he was Assistant Business Manager. Complaint at ¶15; Defendants' Answer at ¶15. In June 2010, after Aldrich had informed plaintiff that he would replace the Director of the Joint Funds Office as the office's Administrative Manager, plaintiff began considering taking his pension to offset the reduction in his pay. Aicher Tr. at 61:11-62:8.

On June 15, 2010, plaintiff emailed the Plan's attorney, Michael T. Scaraggi, Esq., and informed Scaraggi that he intended to apply for his pension to make up the difference between his compensation as Assistant Business Manager and Administrative Manager of the Joint Funds Office. O'Connor Cert., Ex. 15; Scaraggi Tr. at 41:6-23. In reference to Article VI(6)(b) of the Plan, which provided that pension payments shall stop if a pensioner accepts employment in the "electrical construction industry," plaintiff specifically stated that his

employment as Administrative Manager was not work in the "electrical construction industry." Id. Scaraggi did not disagree. At the time, other Plan participants were receiving pension benefits while gainfully employed, including Ken Shea, the president of Carlin Electric, who was a Trustee of the Plan, and David Rowe, a former electrician who was performing estimates for Lessner Electric. Transcript of Deposition of Kenneth Shea (O'Connor Cert., Ex. 5) at 11:4-12:12, 16:25-18:1, 21:17-27:23; Transcript of Deposition of Michael T. Scaraggi, Esq. (O'Connor Cert., Ex. 6) at 17:17-24:22; April 2, 2010 Correspondence from Jed Marcus, Esq. to Michael Scaraggi, Esq. (O'Connor Cert., Ex. 13); May 14, 2010 Minutes of the Joint Board Meeting (O'Connor Cert., Ex. 14).

On June 28, 2010, after the Joint Board meeting at which plaintiff was named Administrative Manager of the Joint Funds Office, plaintiff discussed his intention to retire and begin receiving his pension benefit with Scaraggi. Aicher Tr. at 66:4-10, 78:9-80:15; Scaraggi Tr. at 10-12. When they discussed Article VI(6)(a) of the Plan, which stated that pension payments would cease if a pensioner accepted employment in a position in which pension credits were earned, Scaraggi told plaintiff he had an absolute right to opt out of the Plan and begin receiving his pension. Aicher Tr. at 78:5-80:15.

9

Following their conversation, Scaraggi, in his capacity as the Plan's attorney, prepared a form through which plaintiff could waive his right to accrue pension credits under the Plan. Complaint at ¶20; Defendants' Answer at ¶20; Aicher Tr. at 81:12-15. On August 24, 2010, plaintiff executed the "Waiver of Participation in the IBEW Local Union No. 269 Pension Plan" and waived his right to accrue future benefits in exchange for the right to begin receiving his retirement pension. Complaint at ¶19; Defendants' Answer at ¶19; Waiver of Participation (O'Connor Cert., Ex. 16).

On August 27, 2010, plaintiff submitted a pension to I.E. Schaffer & Co., the administrator of the Plan, on the required form. Complaint at ¶23; Defendants' Answer at ¶23; Pension Application (O'Connor Cert., Ex. 17); Aicher Tr. at 94:16-95:11. The application included the signed waiver. O'Connor Cert., Ex. 17.

### F. **PLAINTIFF INFORMS THE JOINT BOARD OF HIS INTENTION TO BEGIN TAKING HIS PENSION**

On August 27, 2010, plaintiff met with the Trustees of the Plan and informed the Trustees of his intention to waive his right to accrue pension benefits, exercise his right to receive a retirement pension from the Plan, and continue his employment as Administrative Manager of the Joint Funds Office. Complaint at ¶22; Defendants' Answer at ¶22. He specifically informed the

Trustees that he would opt out of continued participation in the Plan but continue to work as Administrative Manager of the Joint Funds Office, and that the arrangement would not violate the return to work rules of the Plan.   August 27, 2010 Minutes of the Joint Board Meeting at item 25. (O'Connor Cert., Ex. 18). No one disagreed.   Scaraggi Tr. at 70:13-71:4.

As plaintiff left the meeting after his announcement, he overheard Aldrich exclaim, "If you think I'm standing up in front of the membership and telling them he is working in the funds office and getting a pension you're nuts." Aicher Tr. at 91:1-17. At the executive session held after plaintiff's announcement, the Trustees expressed concern that plaintiff's plan to retire would upset the rank and file members of the Union.   Transcript of Deposition of Jonathan Levine (O'Connor Cert., Ex. 7) at 61:8-18.

The remarks echoed remarks made in July 2010 after plaintiff informed Stephen Aldrich, the Business Manager, and Wayne DeAngelo, the Assistant Business Manager, that he intended to begin receiving a retirement pension from the Plan to offset the reduction in his pay.   At that time, DeAngelo told Aldrich that if plaintiff began receiving his pension while continuing his employment as Administrative Manager for the Joint Funds Office, it would upset the "rank and file" and undermine

11

Aldrich's opportunity to be re-elected as Business Manager. Complaint at ¶¶17-18; Defendants' Answer at ¶¶17-18.

## G. **THE JOINT BOARD INTERFERES WITH PLAINTIFF'S RIGHT TO RECEIVE RETIREMENT PENSION BENEFITS**

On September 3, 2010, the Joint Board held a Special Meeting to discuss plaintiff's plan to retire for pension purposes and continue working as Administrative Manager. Complaint at ¶24; Defendants' Answer at ¶24. During its deliberations, the Joint Board again expressed concern over the impact plaintiff's plan to collect his pension and continue to work as Administrative Manager would have on the rank and file union members. Id.

Ultimately, the "Trustees acknowledged the qualifications of Aicher as an Administrative Manager and based upon 'current circumstances' determined that Aicher either had to be a participant of all Benefit Funds including the Local 269. Pension Plan or retire." Complaint at ¶27; Defendants' Answer at ¶27. In other words, the Trustees rejected plaintiff's waiver of his right to earn pension credits. However, nothing in the Pension Plan or any other welfare benefit plan required an employee to participate in all plans or none. Scaraggi Tr. at 87:12-18.

On September 3, 2010, after the Special Meeting, Scaraggi informed plaintiff that the Joint Board was giving him an

ultimatum: he could either take his pension and forfeit his job or keep his job and forego his retirement pension. Complaint at ¶29; Defendants' Answer at ¶29; Aicher Tr. at 101:14-102:12. Following the September 3, 2010 Special Meeting, I.E. Schaffer, the third-party administrator of the Pension Plan, was instructed that it should not process plaintiff's application for pension benefits. Levine Tr. at T8:24-9:5, 13:22-25, 65:11-66:7.

Later on September 3, 2010, plaintiff sent Scaraggi an email, which memorialized their conversation. September 3, 2010 email from Richard T. Aicher, Jr. to Michael T. Scaraggi, Esq. (O'Connor Cert., Ex. 19); Aicher Tr. at 103:12-104:2; Scaraggi Tr. at 90:20-25.

Among other things, the email stated:

[T]he Union Trustees especially, are concerned about the perception of the membership of Local 269, if I continue as the Administrative Manager while receiving my pension benefit. They feel it would be viewed as some form of improper conduct.

However, you have indicated to both the Trustees and me, that such a circumstance is not improper nor would it, in your opinion, violate the Pension Plan's return to work provisions; hence, there is no legal reason that I cannot receive the Pension Benefit while employed as the Administrative Manager.

Nonetheless, the Trustees have given me a choice: I can collect my pension benefits and forfeit my position as Administrative Manager; or withdraw my pension application and keep my job.

13

Unless I hear from you in the next few days otherwise, I will consider this summary of this morning's discussion to be accurate…

O'Connor Cert., Ex. 18.

Scaraggi never told plaintiff the email was inaccurate. Scaraggi Tr. at 90:25-91:3, 92:8-10. To the contrary, he told plaintiff he was "ok" with the email and it was "accurate." Aicher Tr. at 107:20-108:3.

## H. THE TRUSTEES FAIL TO RESPOND TO PLAINTIFF'S CLAIM FOR BENEFITS

The Trustees of the Pension Plan are the named fiduciary responsible for the administration and operation of the Plan. Plan at Article IX(1). Among other things, the Plan requires the Trustees to notify any participant whose claim for benefits is denied of the denial and the specific reasons therefore in writing.  Plan at Article IX(3).

As of September 27, 2010, the Trustees had neither approved plaintiff's August 27, 2010 claim for benefits nor provided plaintiff with a written denial of his pension claim.  Aicher Tr. at 138:6-139:7.  On September 27, 2010, plaintiff wrote to Scaraggi and objected to the ultimatum the Joint Board had given him on September 3, 2013. Complaint at ¶¶30-31; Defendants' Answer at ¶¶30-31; September 27, 2013 Correspondence from Richard T. Aicher, Jr. to Michael T. Scaraggi, Esq. (O'Connor Cert., Ex. 20); Scaraggi Tr. at 92:17-93:2.

14

In pertinent part, the letter stated:

> You advised me that I was entitled to my pension benefit while remaining employed as Administrative Manager; provided, I agreed to "opt-out" of future participation in the Pension Plan. We agreed that it was clear my employment as the Administrative Manager would not violate the return-to-work provisions of the Plan.

> \*       \*       \*

> Clearly, as the Administrative Manager of the Local 269 Funds Office (a salaried office position), I am not working in the same industry (electrical construction) or in the same trade or craft (electrician), so as to be a threat to undercut the wages and working conditions of employees covered by the Plan.

O'Connor Cert., Ex. 20.

Invoking the claim procedure set forth in the Plan, plaintiff requested that the Trustees issue a written determination of his claim for benefits. Id.

Plaintiff subsequently called Scaraggi and asked him if he had received the letter. Scaraggi told him he had received the letter and distributed it to the Trustees. Aicher Tr. at 110:10-111:12. Scaraggi further stated that he would put the issue on the Joint Board's agenda and would respond to the letter. Aicher Tr. at 111:13-15; Scaraggi Tr. at 94:3-25. However, Scaraggi never put the matter on the agenda or responded to the September 27, 2010 letter. Aicher Tr. at 111:16-18.

15

Plaintiff followed up with Scaraggi a second time and asked him if he was going to respond to the letter and Scaraggi admitted he owed plaintiff a response. Aicher Tr. at 120:4-121:1. However, neither the Trustees of the Pension Plan nor Scaraggi provided a written response to plaintiff's claim for benefits at any time prior to plaintiff's December 15, 2011 termination.

## I. **DEFENDANTS RETALIATE AGAINST PLAINTIFF FOR PURSUING HIS CLAIM FOR RETIREMENT PENSION BENEFITS**

On November 23, 2011, plaintiff's counsel wrote to the Trustees of the Plan and requested a written determination of his August 27, 2010 claim for a retirement pension. Complaint at ¶37; Defendants' Answer at ¶37; November 23, 2011 Correspondence from Michael F. O'Connor, Esq. to Trustees attached to the O'Connor Cert. as Exhibit 21. The letter specifically denied that plaintiff's employment as Administrative Manager of the Joint Funds Office was in an "electrical trade or craft." The letter further indicated that if plaintiff did not receive a written determination within ten (10) days, he would construe the silence as a denial and file an appeal; and, if the appeal were ignored, he would file suit. Complaint at ¶38; Defendants' Answer at ¶38; O'Connor Cert., Ex. 21.

On November 28, 2011, Scaraggi responded on behalf of the Plan and indicated that "while I may not be able to provide to

16

you a written position within ten days of November 23, 2011, a detailed position will be provided." Complaint at ¶39; Defendants' Answer at ¶39; November 28, 2011 Correspondence from Michael T. Scaraggi, Esq. to Michael F. O'Connor, Esq. (O'Connor Cert., Ex. 22). He offered no substantive response.

On November 28, 2011, through his counsel, plaintiff reiterated that if he did not receive a timely determination of his claim, he would file an appeal. Complaint at ¶40; Defendants' Answer at ¶40; November 28, 2011 Correspondence from Michael F. O'Connor, Esq. to Michael T. Scaraggi, Esq. attached to the O'Connor Cert. as Exhibit 23.

On December 15, 2011, three weeks after his attorney had insisted that the Trustees of the Pension Plan address his claim, the Joint Board terminated plaintiff's employment. Complaint at ¶42; Defendants' Answer at ¶42. Prior to the termination, neither Scaraggi nor anyone else acting on the Plan's behalf had responded in writing to his claim for pension benefits. In particular, no one had informed plaintiff that he was not entitled to his pension because he was working in the "electrical construction industry."

**J. DEFENDANTS FAIL TO PAY PLAINTIFF THE RETIREMENT BENEFITS TO WHICH HE IS ENTITLED**

On January 3, 2012, I.E. Shaffer, the third party administrator for the Plan, informed plaintiff that his August

17

27, 2010 application for pension benefits had been approved effective January 1, 2012. Complaint at ¶49; Defendants' Answer at ¶49; January 3, 2012 Correspondence from Glenn D. Shaffer to Richard Aicher (O'Connor Cert., Ex. 24). I.E. Shaffer did not set forth a reason for denying the claim for benefits retroactive to September 1, 2010, the first month following plaintiff's August 27, 2010 claim for pension benefits. Complaint at ¶50; Defendants' Answer at ¶50.

On January 25, 2012, plaintiff appealed the denial of his claim for pension benefits between September 1, 2010 and December 31, 2011 to the Trustees of the Plan. Complaint at ¶51; Defendants' Answer at ¶51; January 25, 2012 Correspondence from Michael F. O'Connor, Esq. to Trustees of IBEW Local No. 269 Pension Plan (O'Connor Cert., Ex. 25); Scaraggi Tr. at 148:21-149:8. At the time, the Plan Trustees included three Union trustees, one of whom was Aldrich, and three employer trustees, who owned businesses which funded the Plan. February 24, 2012 Minutes of the Joint Board (O'Connor Cert., Ex. 26); Deposition Tr. of Michael Nielsen (O'Connor Cert., Ex. 8) at 6:4-8, 10:19-23; Deposition Transcript of Ronald Warr (O'Connor Cert., Ex. 9) at 8:8-15, 14:9-25; Collective Bargaining Agreement (O'Connor Cert., Ex. 27) at 33.

Plaintiff's appeal claimed that as of September 1, 2010, he qualified for a retirement pension based on his age and years of

18

service. Complaint at ¶52; Defendants' Answer at ¶52; O'Connor Cert., Ex. 25. Plaintiff's appeal specifically stated that Article VI(6)(b)of the Plan did not apply because plaintiff did not work in an electrical trade or craft. O'Connor Cert. Ex. 25.

On February 29, 2012, the Trustees denied plaintiff's claim for retroactive pension benefits based solely on their determination that he was estopped from claiming retroactive pension benefits because he had (a) failed to raise the Trustees' failure to decide his claim for benefits at any time between August 27, 2010, when he submitted his pension claim, and his counsel's November 23, 2011 correspondence and (b) received pension credits during his employment as Administrative Manager. Complaint at ¶¶54, 57; Defendants' Answer at ¶¶54, 57; February 29, 2012 Correspondence from Michael T. Scaraggi, Esq. to Michael F. O'Connor, Esq. (O'Connor Cert., Ex. 27); Scaraggi Tr. at 156:2-5. The Trustees did not dispute plaintiff's contention that Section VI(6)(b) of the Plan did not apply because his job as Administrative Manager of the Joint Funds Office was not in an "electrical trade or craft."

**K. THE COURT REMANDS THE MATTER TO THE PENSION PLAN TRUSTEES**

In November 2013, the parties cross-moved for summary judgment on the claim for retroactive pension benefits plaintiff pled in Counts Three and Four of the Complaint.

19

On October 20, 2014, the United States District Court for the District of New Jersey denied the motions. Document 68. The Court rejected the reasons that the defendants had relied on during the administrative process. Document 67. However, the Court remanded plaintiff's claim for retroactive pension benefits to the Board of Trustees of defendant IBEW Local Union No. 269 Pension Plan so that the Trustees could develop a record on the argument that the Trustees had raised for the first time on summary judgment: that plaintiff's employment as Administrative Manager of the Joint Funds Office disqualified him from pension benefits under Article VI(6)(b) of the Plan.[2]

The Court ruled that on remand, the Trustees should address the facts that plaintiff asserted established that his employment as Administrative Manager of the Joint Funds Office was not "in the electrical construction industry," including: (1) Trustee Warr's testimony that plaintiff's employment was not in the electrical construction industry as the Plan defined that term; (2) Trustee DeAngelo's testimony that as Administrative Manager of the Joint Funds Office, plaintiff performed the same

---

[2] Article VI(6)(b) of the Plan states: "If a Pensioner accepts employment in the electrical construction industry, pension payments accrued after January 1, 2002 and payable prior to attainment of age 62 shall immediately cease as of the first of the month next following the date of return to work, except if employed as a teacher/instructor of an IBEW approved training program or as an electrical inspector."

20

function as the Plan's third-party administrator; and, (3) defendants' practice of paying benefits to pensioners received benefits who worked for electrical contractors in administrative positions.   Document 67 at 10-11.

## L. **THE TRUSTEES UNLAWFULLY DENY PLAINTIFF'S CLAIM FOR RETROACTIVE PENSION BENEFITS**

On June 29, 2015, following the denial of plaintiff's motion for reconsideration, plaintiff submitted a claim letter to the Trustees.   Plaintiff asserted that his employment as Administrative Manager did not disqualify him from pension benefits under Plan Article VI(6)(b) for three reasons: (1) Article VI(6)(b) is unenforceable because it violates ERISA's non-forfeiture provision; (2) Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the "electrical construction industry;" and, (3) Plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the same "trade or craft" as his prior employment as (a) an electrician and (b) Assistant Business Manager of the Local Union No. 269.   See June 29, 2015 Correspondence from Michael F. O'Connor, Esq. to Trustees of the IBEW Local No. 269 Pension Plan attached to the O'Connor Cert. as Ex. 31.

On September 10, 2015, the Trustees denied plaintiff's claim based on their conclusion that his position as Administrative Manager of the Joint Funds Office was "in the

21

electrical construction industry." See September 10, 2015 Correspondence from Michael T. Scaraggi, Esq. to Michael F. O'Connor, Esq. (O'Connor Cert., Ex. 32). The sole basis for the Trustees' conclusion that plaintiff's employment as Administrative Manager of the Joint Funds Office was "in the electrical construction industry" was its finding that plaintiff's employment was "Plan-related employment" in which he accrued pension credits.

However, the term, "Plan-related employment" does not appear in the Plan. Moreover, in the Plan's definition of hours of service, the Plan distinguishes between hours for which an employee is paid for the "performance of duties as an electrical worker" and hours for which the employee is paid for "reasons other than the performance of duties as an electrical worker…" Plan at Art. I(14)(a) and (b) (O'Connor Cert., Ex. 12). The Trustees merely recast their prior reason for denying benefits – that plaintiff accrued pension credits during his employment as Administrative Manager – in new language.

The Trustees ignored the Court's directive in its October 20, 2014 Opinion to address the evidence on which plaintiff had relied at summary judgment and again in his June 29, 2015 claim letter, including but not limited to the testimony of Trustees Warr and DeAngelo and the Plan's practice of paying benefits to pensioners who worked for electrical contractors in

22

administrative positions.   The Trustees also failed to address either of plaintiff's assertions that (a) Article VI(6)(b) is unenforceable   because   it   violates   ERISA's   non-forfeiture provision; or (b) plaintiff was not disqualified from pension benefits because his employment as Administrative Manager was not in the same "trade or craft" as either his prior employment as a union electrician or his prior employment as Assistant Business Manager of the Union.

In his Rule 30(b)(6) deposition, Trustee DeAngelo was unable to articulate the factual basis for the Trustees' position that the return to work provisions of the Plan barred Aicher's claim for retroactive pension benefits.   DeAngelo II at 131:3-138:17.

On September 22, 2015, defendants admitted that plaintiff had exhausted his administrative remedies.   Answer at ¶¶115-16. The claim is ripe for determination.

## LEGAL ARGUMENT

### THE COURT SHOULD GRANT SUMMARY JUDGMENT TO PLAINTIFF ON COUNT FOUR OF HIS AMENDED COMPLAINT AND AWARD HIM THE VALUE OF HIS CLAIM FOR RETROACTIVE PENSION BENEFITS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with

23

the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

## B. **ERISA STANDARDS**

### 1. **Plaintiff has standing to bring his claim**

The Plan is a pension plan governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. See 29 U.S.C. § 1002(1); <u>Massachusetts v. Morash</u>, 490 U.S. 108, 116 (1989); see also Answer at ¶7. Under ERISA, a civil action may be brought by a participant or a beneficiary. 29 U.S.C. at § 1132(a). Plaintiff is a participant in the Plan. Answer at ¶16. He has standing to bring this action.

### 2. **Defendants are proper parties to the case**

ERISA provides that claims for benefits arising out of an ERISA plan should be brought against the plan as a separate

entity.  Cappuccio v. Pfizer, Inc., 2007 WL 2593704 (E.D. Pa)[3] at *4 (citing 29 U.S.C. § 1132(d)(1)-(2)).  The Plan is a proper defendant under ERISA.

The employer also may be a proper party in an ERISA suit for the recovery of benefits if (a) the employer is a fiduciary of the plan; or (b) the employer is the plan administrator in either a de facto or de jure capacity.  29 U.S.C. § 1002(21)(A); Cappuccio, supra (citing Curcio v. John Hancock Mutual Life Ins. Co., 33 F.3d 226, 234 93d Cir. 1994); Vaughn v. Metro. Life Ins. Co., 87 F.Supp.2d 421, 435 (E.D. Pa. 2000); and Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 350 (5th Cir. 2003).  An employer is a fiduciary of a plan to the extent it exercises authority or control over (a) the management of the plan, (b) the management and disposition of its assets, or (c) the administration of the plan.  29 U.S.C. § 1002(21)(A).

The Plan Trustees were members of the Joint Board, which was plaintiff's employer. The Joint Board initially instructed I.E. Shaffer to ignore plaintiff's pension application.  After plaintiff's termination, the Trustees instructed I.E. Shaffer to deny plaintiff's claim for retroactive pension benefits. Therefore, the Joint Board is also a proper defendant.

**3.   Standard of review**

---

[3] See Exhibit A hereto.

Under ERISA, a benefit denial that is based on a legal determination is reviewed de novo regardless of whether the plan gives the administrator the authority to determine eligibility for benefits or to construe the terms of the plan. Miller v. American Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (citation omitted). Federal courts, which are experts on federal law, owe no deference to the legal determinations of plan administrators, who are not. Bruch v. Firestone Tire & Rubber Company, 828 F.2d 134, 148-49 (3d Cir. 1987), *affirmed in part, reversed in part on other grounds*, 489 U.S. 101 (1989); see also Hannington v. Sun Life & Health Ins. Co., 711 F3d. 226, 230-31 (1st Cir. 2013); Riley v. Sun Life & Health Ins. Co., 657 F.3d 739, 741-42 (8th Cir. 2011); Johanssen v. Distr. No. 1 – Pac. Const. Dist. MEBA Pension Plan, 292 F.3d 159, 169 (4th Cir. 2002), *abrogated on other grounds by* Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); Weil v. Ret. Plan Admin. Comm. of Terson Co., 933 F2d. 1045, 1049 (2d Cir. 1990).

The questions before the Court are:

(1) Whether Article VI(6)(b) of the Plan is enforceable under ERISA or violates ERISA's non-forfeiture provision;

(2) Whether plaintiff's employment as Administrative Manager of the Joint Funds Office was in the electrical construction industry;

26

(3) Whether plaintiff's employment as Administrative Manager of the Joint Funds Office was in the same industry and same trade or craft as his prior employment as (a) a union electrician or (b) Assistant Business Manager of IBEW Local Union No. 269 is a question of law subject to de novo review.

Each question is a legal question subject to de novo review. Defendants admit this in their Answer to the Amended Complaint. O'Connor Cert., Ex. 2 at ¶¶80, 100.

## C. **PLAINTIFF WAS ELIGIBLE FOR PENSION BENEFITS WHEN HE SUBMITTED HIS CLAIM**

Based on the combination of his age, fifty-nine, and his thirty-nine years of service (a total of 98), plaintiff satisfied the eligibility requirements of the Plan under the Rule of 85. That fact is not in dispute. Answer at ¶16.

## D. **THE RETURN TO WORK PROVISION OF THE PLAN VIOLATES ERISA'S NON-FORFEITURE RULE**

The Court should grant plaintiff summary judgment because Article VI(6)(b) of the Plan violates ERISA's anti-forfeiture provision, 29 U.S.C. § 1053(a)(3)(B)(ii). Under 29 U.S.C. § 1053(a)(3)(B)(ii,) a forfeiture provision in a multi-employer ERISA-governed benefit plan is valid only if it provides for the suspension of accrued benefits where the employee works "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits

27

commenced." See also 29 C.F.R. § 2530.203-3(c). Limitations that are not expressly permitted by § 1053 are unlawful. Thomson v. I.A.M. National Pension Fund, 616 F.2d 343, 346 (7th Cir. 1980).

The overly broad language of Article VI(6)(b) of the Plan violates ERISA's anti-forfeiture provision because it provides for the cessation of benefits to any pensioner who accepts employment in the "electrical construction industry" regardless of whether he is working in the same trade or craft or in the same geographic area as when his benefit commenced. Since the Plan's forfeiture provision violates ERISA, the defendants may not rely on it to justify the denial of plaintiff's claim for retirement benefits. Smith v. CMTA-IAM Pension Trust, 654 F.2d 650, 659 (9th Cir. 1981); Thomson, supra, 616 F.2d at 346. Further, the Court may not rewrite the Plan to conform to ERISA's requirements. Levinson v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987).

E. **PLAINTIFF'S EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE WAS NOT EMPLOYMENT IN THE "ELECTRICAL CONSTRUCTION INDUSTRY"**

1. **defendants have admitted that plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the electrical construction industry**

Even if the Plan was ERISA-compliant, summary judgment would still be proper because plaintiff's employment as Administrative Manager of the Joint Funds Office was not in the "electrical construction industry" as the Plan defines the term.

28

Two Trustees admitted that fact in their deposition. See Warr Tr. at 28:12-15 (O'Connor Cert., Ex. 9) and DeAngelo Tr. at 33:3-8 (O'Connor Cert., Ex. 11). Plaintiff's job duties were not included in the schedule of work that falls within the jurisdiction of the IBEW. See Articles 9.2 and 9.3 of the CBA (O'Connor Cert., Ex. 27). Finally, the Plan paid pension benefits to pensioners who worked for electrical contractors in administrative positions. The Plan would not have paid benefits to those pensioners if they worked in the "electrical construction industry" as the Plan defines the term.

On four occasions prior to the filing of this lawsuit, the Trustees failed to dispute plaintiff's assertion that his employment as Administrative Manager of the Joint Funds Office was not in the electrical construction industry:

(1) at the August 27, 2010 executive session of the Joint Board,

(2) when plaintiff sent his September 27, 2010 correspondence to the Plan's attorney,

(3) when plaintiff's attorney sent his November 23, 2011 letter to the Trustees; and,

(4) when the Trustees ruled on plaintiff's January 25, 2012 appeal of the denial of plaintiff's claim for retroactive pension benefits.

29

Given the Trustees' status as the named fiduciary and their obligation under ERISA and Article IX of the Plan to provide plaintiff with the reasons for the denial of his claim in writing, their silence constitutes an adoptive admission of plaintiff's assertion that his employment as Administrative Manager was not employment in the "electrical construction industry." See U.S. v. Lafferty, 503 F.3d 293, 306 (3d Cir. 2007)(a statement is admissible as an adoptive admission "where the person would, under the circumstances, protest the statement made in his presence, if untrue").

**2. defendants have failed to demonstrate that plaintiff's employment as Administrative Manager of the Joint Funds Office was in the "electrical construction industry"**

Despite a second bite at the apple, in their September 10, 2015 demand letter, the Trustees failed to address either Trustee Warr or Trustee DeAngelo's testimony that plaintiff's employment as Administrative Manager was not in the electrical construction industry or the Plan's practice of paying pensioners who perform administrative duties for electrical contractors. Moreover, in his Rule 30(b)(6) deposition, DeAngelo was unable to articulate a factual basis for the Trustees' conclusion that plaintiff's employment as Administrative Manager of the Joint Funds Office disqualified him from benefits under Article VI(b)(6) of the Plan.

30

Rather, in their September 10, 2015 letter, the Trustees based their conclusion that plaintiff was employed in the "electrical construction industry" solely on their finding was that plaintiff engaged in "Plan-related employment" in which he accrued pension credits. However, the term, "Plan-related employment" does not appear in the Plan and has no legal significance under ERISA. To the contrary, in the Plan's definition of hours of service, the Plan distinguishes between hours for which an employee is paid for the "performance of duties as an electrical worker" and hours for which the employee is paid for "reasons other than the performance of duties as an electrical worker…" In the September 10, 2015 denial letter, the Trustees merely restated a reason for denying benefits – that plaintiff accrued pension credits during his employment as Administrative Manager, which this Court previously rejected. The reason failed on the first go-around and it fails now.

F. **PLAINTIFF'S EMPLOYMENT AS ADMINISTRATIVE MANAGER OF THE JOINT FUNDS OFFICE WAS NOT EMPLOYMENT IN THE SAME TRADE OR CRAFT AS HIS PRIOR EMPLOYMENT**

Summary judgment is also warranted because plaintiff's employment as Administrative Manager was not in the same trade or craft as his prior employment as an electrician or Assistant Business Manager of the Union.

The question of whether plaintiff's employment as Administrative Manager of the Joint Funds Office was in the same

31

industry and same "trade or craft" as his prior employment as an electrician and Assistant Business Manager of the Union is a question of law. Defendants' Answer at ¶¶80 and 100; see also Eisenreich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan, 574 F.3d 644, 648 (8th Cir. 2009)(plan's determination that plaintiff's job was in the same trade or craft is a legal determination reviewed de novo).[4]

The applicable regulation defines a "[t]rade or craft" as

(A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) of (B) of this paragraph (c)(2)(ii).

29 C.F.R. § 2530.203-3(c)(2)(ii).

Two jobs are considered in the same trade or craft if they utilize "significantly the same skills." Smith, supra, 654 F.2d at 659 n. 12 (9th Cir. 1981).

Plaintiff utilized different skills in the Administrative Manager position than he used in his prior two jobs. As Administrative Manager, plaintiff performed managerial and administrative duties, which were completely different in nature from the electrical work he performed as an electrician and the labor relations he performed as Assistant Business Manager. The

---

[4] The de novo standard also applies where, as here, the administrator did not provide any analysis to defer to. Gritzer v. CBS, Inc., 275 F.3d 291, 296 (3d Cir. 2002).

Administrative Manager job was not in the same trade or craft as plaintiff's job as an electrician or his job as Assistant Business Manager of the Union as a matter of law. See *e.g.*, Eisenreich, supra, 574 F.3d at 650 (delivering baked goods not the same trade or craft as meat cutting where different skills are used); and, Jones v. Western Conference of Teamsters Pension Plan, 2008 WL 3892055 (E.D.Cal August 21, 2008) at *4 (employment as a mail carrier was not in the same industry and trade and craft as employment as a commercial truck driver).[5]

Defendants have failed to adduce any evidence that plaintiff's employment as Administrative Manager of the Joint Funds Office was in the same trade or craft as his prior employment as Assistant Business Manager of the union and as an electrician. The Trustees failed to address this issue in their September 10, 2015 denial letter. And, in his deposition, DeAngelo, the Trustees' designated representative, could not answer the question of whether the position of Administrative Manager of the Joint Funds Office required different skills than the position of Assistant Business Manager:

Q: Would you agree that your job as assistant business manager requires different skills than the job of administrative manager of the Joint Funds Office?

A: I cannot answer that.

---

[5] See Exhibit B.

33

DeAngelo II at 111:17-112:2.

DeAngelo was unable to answer the question even though he has been employed as Assistant Business Manager of the union and has served as a Trustee of the Pension Plan for many years.

G. **THE COURT SHOULD AWARD PLAINTIFF THE VALUE OF HIS RETROACTIVE BENEFIT PLUS INTEREST**

Under 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil suit to recover the benefits due to him under the terms of his plan. Pursuant to section 1132(a)(1)(B), the Court should award plaintiff $109,044.80, the amount of the pension benefit he should have received from September 1, 2010 through December 31, 2011. March 8, 2016 Correspondence from James Passantino, Esq. (O'Connor Cert., Ex. 34).

The Third Circuit has held that an ERISA plaintiff may recover prejudgment interest, which is an equitable remedy left to the discretion of the trial court. Pazos v. Lyondell Chemical Company, 2001 WL 1667300 (E.D. Pa.)[6] at * 4 n. 4 (citing Holmes v. Pension Plan of Bethlehem Steel Corp., 214 F.3d 124, 131 (3d Cir. 2000). Prejudgment interest is "presumptively appropriate" in ERISA cases. Holmes, 214 F.3d at 131. It "is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has

---

[6] See Exhibit C.

34

been denied the use of money which is legally due." Id. (quoting Anthuis v. Colt Industries Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992) (internal quotations omitted). The interest rate may be awarded based on the post-judgment interest rate set forth in 28 U.S.C. § 1961. Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.) cert. den. 454 U.S. 968 (1981); Hardtke v. Exide Corporation, 821 F.Supp. 1021, 1032 n. 17 (E.D. Pa 2003).

As set forth in the table attached to the O'Connor Certification as Exhibit 30, the total interest owed to plaintiff is $636.47  Thus, the total amount of the judgment on Count Four of the complaint should be $109,681.27 plus attorney's fees.

## POINT II

### THE COURT SHOULD ENTER JUDGMENT ON COUNT THREE OF THE AMENDED COMPLAINT

Section 1132(a)(3) of ERISA authorizes a civil action:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The Trustees violated the following provisions of ERISA:

(1) section 1104, which imposed a fiduciary duty on the Trustees to act solely in the interest of the Plan and its

35

beneficiaries, rather than out of a concern over Aldrich's chances for re-election as Business Manager of the Union;

2) section 1133, which required the Plan to provide adequate notice in writing to plaintiff of the denial of his claim for benefits, setting forth the specific reasons for such denial, written in a manner calculated to be understood by him, which the Plan failed to do for sixteen months after plaintiff filed his claim for benefits, despite his September 27, 2010 request for same; and,

(3) section 1140, which makes it unlawful to threaten an employee with discharge to deter him from filing a claim for pension benefits.

The appropriate remedy is restitution in the form of a constructive trust for the amount of the benefits that should have been paid to plaintiff plus interest. Pell v. E.I. DuPont De Nemours & Company, Inc., 539 F.3d 292, 308-310 (3d Cir. 2008); Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 214-215 (3d Cir. 2004).

## POINT III

### THE COURT SHOULD GRANT PLAINTIFF REASONABLE ATTORNEY'S FEES

Although "there is no presumption that a successful plaintiff in an ERISA suit should receive an award [of attorney's fees] in the absence of exceptional circumstances," McPherson v. Employees' Pension Plan of Am. Re-

36

Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir.1994), in fact, "the defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff or plaintiff class, thus 'encourag[ing] private enforcement of the statutory substantive rights, whether they be economic or noneconomic, through the judicial process.' " Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir.2000) (quoting Report of the Third Circuit Task Force, Court Awarded Attorney Fees 15 (Oct. 8, 1985), reprinted at 108 F.R.D. 237, 250).

Under Ursic, the district court must consider five factors in deciding whether to grant attorney's fees in ERISA cases:

1. the offending parties' culpability or bad faith;

2. the ability of the offending parties to satisfy an award of attorneys' fees;

3. the deterrent effect of an award of attorneys' fees against the offending parties;

4. the benefit conferred on members of the pension plan as a whole; and

5. the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).(citations omitted). A district court must consider all five Ursic factors. Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1011 (3d Cir.1992).

Application of these factors weighs heavily in favor of

37

awarding plaintiff attorney's fees.  Defendants are the culpable party.  Defendants acted in bad faith.  They attempted to deter plaintiff from claiming his pension because of a concern that his receipt of benefits might undermine the Business Manager's chances for reelection. They rejected his waiver in order to create a false premise for denying benefits. Finally, when plaintiff persisted with his claim, defendants fired him and denied his claim for benefits despite his clear eligibility for a retroactive pension based on bogus reasoning.

The Plan has the ability to pay the fee award.  According to the exhibits to the November 18, 2011 minutes, the pension fund had over $75,000,000 as of September 2011. O'Connor Cert., Ex. 29. Given the substantial increase in the stock market since that time, the pension fund likely has many millions of dollars more in it as of today's date.

An award of attorney's fees should have the dual effect of deterring defendants from similar conduct and encouraging private litigants to enforce ERISA through private suits.

Finally, the relative merits of the parties' positions weighs in favor of an award of attorney's fees.  Plaintiff had a clear right to his pension as the Plan's own attorney confirmed. Defendants had no right to reject his waiver of participation, which the Plan's own attorney had prepared. Defendants' other reason for denying benefits – that plaintiff is estopped because

38

he did not pester the Trustees for a decision after they refused to issue a written determination of his claim – is contrived. There is nothing in either the Plan or ERISA that required him to take further action.

Defendants' *post hoc* reason for denying benefits is also contrived. It is contradicted by the sworn testimony of two Trustees; the collective bargaining agreement; and, defendants' own practice in paying benefits to pensioners who work in administrative positions.

Defendants denied plaintiff's claim because he defied Union leadership's attempt to discourage him from exercising his legally protected right to his pension. They had no legal right to do so as their own attorney had advised them.

For these reasons, the Court should grant plaintiff attorney's fees. Should the Court grant this aspect of the motion, plaintiff will submit an application for fees, which complies with Local Civil Rule 54.2.

39

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on Counts Three and Four of the complaint in plaintiff's favor in the amount of $109,681.27 and award him reasonable attorney's fees and costs.

Respectfully,

MCMORAN O'CONNOR & BRAMLEY, PC
Attorneys for plaintiff,
Richard T. Aicher, Jr.

By: _____
MICHAEL F. O'CONNOR

Dated: September 30, 2016

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458
(Cite as: 2001 WL 1667300 (E.D.Pa.))

C

United States District Court, E.D. Pennsylvania.
JOSE PAZOS, Plaintiff,
v.
LYONDELL CHEMICAL COMPANY, et al., Defendants.

No. 01–7.
Dec. 20, 2001.

MEMORANDUM
EDUARDO C. ROBRENO, Judge.

*1 Plaintiff, Jose Pazos, filed a complaint against defendants Lyondell Chemical Company ("Lyondell") and ARCO Chemical Company Change of Control Plan (the "Plan") alleging violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 § 1001 et seq., and seeking to recover additional separation benefits under the Plan. Before the court are the parties' cross motions for summary judgment.[FN1] For the reasons that follow, the court will grant the plaintiff's motion for summary judgment (doc. no. 14) and deny the defendants' motion for summary judgment (doc. no. 13).[FN2]

FN1. . Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's

favor. See Big Apple BMW, Inc. v. BMW of N. Amer., Inc., 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed. 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. See Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN2. . The original complaint sought benefits based on two theories: (1) a benefits claim against the employer pursuant to 29 U.S.C. § 1132(a)(1)(B); and (2) a breach of fiduciary duty claim pursuant to § 1132(a)(3). The plaintiff's motion for summary judgment did not pursue the breach of fiduciary duty claim, and in its reply to the defendants' motion on that claim, the plaintiff stated that it would not oppose the defendants' motion with respect to that claim. Accordingly, the defendants are entitled to summary judgment with respect to the fiduciary duty claim.

I. BACKGROUND

The plaintiff was an employee of ARCO Chemical Company ("ARCO") when ARCO was acquired

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 50 of 62 PageID:
Case 3:12-cv-01781-FLW-TJB    Document 45-3  Filed 12/13/13   Page 112 of 115 PageID: 655

Page 2

Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458
(Cite as: 2001 WL 1667300 (E.D.Pa.))

by Lyondell. Prior to the acquisition by Lyondell, ARCO enacted the Plan, which provided qualified employees who were terminated within two years of a change of control in the ownership of ARCO, such as the acquisition of ARCO by Lyondell, with salary separation benefits based on the employee's classification either at the time of the change of control or on the date of termination, whichever would be more favorable to the employee. The plaintiff was terminated by Lyondell within two years from the change of control. The Plan provided plaintiff with separation benefits of $50,116.50 based on an employee classification of "E". Plaintiff argues that he is entitled to benefits placing him under employee classification "D", entitling him to benefits of $157,575.60.

Prior to the change of control in July 1998, the plaintiff worked for ARCO as a Senior Research Advisor. This position was assigned a classification of "E" under ARCO's employee classification system. Lyondell acquired ARCO on July 23, 1998. In October 1998, Lyondell promoted the plaintiff to Principal Research Advisor which, under the ARCO employee classification system, would have placed him in classification "D". On January 1, 1999, when Lyondell integrated all of the former ARCO employees into its own "market reference system," Lyondell changed the plaintiff's job title to Research Scientist V, although plaintiff's compensation, duties and responsibilities were not changed. Plaintiff was terminated from Lyondell in March 2000.

The Plan provides that employees terminated within two years of the change of control should receive separation benefits based on their employee classification as of the date of their termination, or, if higher, on the date of the change of control. The Plan states:

A Participant's Employee Classification shall be determined as set forth in the official records of the Company, and shall be based on his or her status [as] of the date immediately preceding the Partici-

pant's termination date, or, if it would entitle the Participant to a greater Salary Separation Payment or longer Salary Separation Period, as of the date immediately preceding the date on which the Change of Control occurs.

Comprehensive Stipulation Facts ("Stipulation") ¶ 21, Defs.' Mot. Summ. J. Ex. A. The Plan further notes that the Plan is binding upon ARCO and upon its successors and assigns. The Plan states:
*2 This Plan shall be binding upon the Company, its successors and assigns, and the Company shall require any successor to expressly assume and agree to perform this Plan in the same manner and to the same extent that the Company would be required to perform it if no such succession or assignment had taken place.

Pl. Mot. Summ. J. Ex. 1 § 7.1(a).
II. DISCUSSION

The first step in determining whether a member of an ERISA qualified plan is entitled to benefits is to establish the appropriate standard of review. The Supreme Court has determined that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Plan in this case does not provide any discretionary authority to the administrator to determine plan interpretation or participant qualification. *See* Stipulation ¶ 27. Thus, de novo review is the appropriate standard in this case. *See Luby v. Teamsters Health, Wellfare, and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir.1991).

Breach of contract principles, applied in light of federal common law, provide the substantive rule of decision in interpreting ERISA plans. *See Kemmerer*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458
**(Cite as: 2001 WL 1667300 (E.D.Pa.))**

*v. ICI Americas Inc., 70 F.3d 281, 287 (3d Cir.1995).* The task of constructing a contract begins by reference to the language of the contract itself. Similarly, determining the parties' duties and obligations under an ERISA plan also begins with the words of the plan. See *Dewitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 520 (3d Cir.1997). Whether the disputed contract language is ambiguous is a question of law for the court. *See In re: New Valley Corp.,* 89 F.3d 143, 150 (3d Cir.1996). An ambiguity arises when the language at issue is subject to at least two reasonable interpretations. See *Bill Gray Enters. v. Gourley,* 248 F.3d 206, 218 (3d Cir.2001). In evaluating whether a contract is ambiguous, a trial court does "not simply determine whether, from [its] point of view, the language is clear." *Id.* Courts "hear the proffer of the parties and determine if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible to different meanings." *Id.* (quoting *Sheet Metal Workers Int'l Ass'n, Local 19 v. 2300 Group, Inc.,* 949 F.2d 1274, 1284 (3d Cir.1991)). Before making a finding as to whether the contract is ambiguous, courts may "consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Id.* The court is not bound by the four corners of a document in making that determination, as a contract may not appear to be ambiguous without an examination of the context in which the contract was made. See *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.,* 198 F.3d 415, 421 (3d Cir.1999).

The Plan provides that the plaintiff was entitled to use, as the employee classification for determining benefits, the more favorable of (1) the employee classification set forth in the company's official records on the date of his termination from Lyondell or (2) the employee classification set forth in the official records on the date of the change of control. There is no dispute as to the plaintiff's employee classification of "E" on the date of the change of control. The issue is what was plaintiff's employee classification on the date of termination.

**\*3** Plaintiff contends that on the date of termination his employee classification was "D". Plaintiff argues that the position of Research Scientist V, which he held on the date of termination, was the equivalent of the position of Principal Research Advisor under the ARCO employee classification system. Under the ARCO employee classification system, the position of Principal Research Advisor was assigned a classification of "D". On the other hand, defendants contend that on the date of plaintiff's termination, Lyondell had not adopted ARCO's employee classification system. Defendants explain that although when Lyondell acquired ARCO in July 1998 it kept the titles and salaries for all former ARCO personnel used by ARCO under ARCO's employee classification system for a transition period, it did not adopt the ARCO employee classification system itself. Specifically, when the plaintiff was promoted in October 1998, Lyondell claims it used the same job title previously used by ARCO to describe his new position, but did not assign it the classification the position would have had under the ARCO employee classification system.

Defendants acknowledge that the new position to which the plaintiff was promoted by Lyondell would have had a classification "D" under the ARCO employee classification system. Despite using the old title, defendants argue that they never considered the new position to fall within classification "D" because Lyondell did not adopt the ARCO classification system. Therefore, according to defendants, the position held by plaintiff had no classification at all on the date of his termination. Given the alternative of an employee classification of "E", the pre-promotion classification plaintiff had at ARCO, and no classification after the change of control occurred, the defendants reason that the most favorable classification the plaintiff is entitled to is "E".

Defendants' position is contrary to the plain language of the Plan. The Plan itself provides that the employee's classification upon which the benefits will

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458
**(Cite as: 2001 WL 1667300 (E.D.Pa.))**

be calculated will be based on the employee's "status" either at the time of the change of control or at the termination of employment. Stipulation ¶ 21 (quoting Plan App. A). "Status" generally means the "condition of a person" or, more appropriately the term, "position or rank in relation to others." *Webster's New Collegiate Dictionary* (1979).[FN3] At the time of the change of control, plaintiffs "status", i.e. position or rank, was that of Senior Research Advisor with an employee classification of "E". After the change of control, plaintiff was promoted by Lyondell to Principal Research Advisor, as titled under the ARCO employee classification system. Upon being promoted to Principal Research Advisor by Lyondell, plaintiff's "status" changed, i.e. his "position or rank in relation to others" improved. Later, Lyondell renamed the Principal Research Advisor position Research Scientist V to conform with its own market reference system, but did not change the compensation, duties or responsibilities attached to the plaintiff's position, i.e. did not change "the position or rank [of plaintiff's new job] in relation to others." Plaintiff remained in the new position until he was terminated within two years of the date of the change of control. Thus, at the time of termination, plaintiff's status, i.e. his position or rank in relation to others, continued to be a "D", the classification which the new position would have been assigned under the ARCO employee classification system. The court concludes that a mere change of title, without a change in compensation, duties or responsibilities, did not affect the plaintiff's employee status for the purpose of calculating ERISA benefits.

> FN3. . The use of dictionaries is an accepted way of finding the common usage of particular words. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 188 (3rd Cir.1997) (discussing how words should be understood according to their common usage and using a dictionary to determine their common usage).

Defendants' argument is also contrary to the

purpose of the Plan. The Plan provides that the successor to ARCO would be required (for a two year period) to perform under the Plan "in the same manner and to the same extent that [ARCO] would be required to perform." Plan § 7.1(a). Thus, if ARCO had promoted plaintiff to the position of Principal Research Advisor, as re-titled Research Scientist V under Lyondell's market reference system, at termination, ARCO would have been obligated to calculate separation payments based upon the job classification of the new position. Clearly, it was intended that under the Plan any successor would have the same obligations as ARCO. This provision guaranteed Plan members that if they were promoted within two years of the date of the change of control by the successor of ARCO, they would be treated for the purposes of calculating separation benefits as if they had been promoted by ARCO. Defendants' interpretation of the Plan would thwart this purpose in that unless ARCO was purchased by a successor with an employee classification system that mirrored the employee classification system at ARCO, the successor could evade the obligation "to perform in the same manner and to the same extent" as ARCO simply by changing titles of the existing positions, creating a new position, or eliminating the classification altogether, just as Lyondell did here. The court will not construe the Plan in a manner which would render one of its essential provisions basically illusory. *See Kemmerer,* 70 F.3d at 288.

**\*4** The court finds that the Plan is unambiguous. The plain language of the Plan, read in light of the purposes to be achieved and upon consideration of the interpretations suggested by counsel, provides only one reasonable interpretation. Thereunder, the plaintiff is entitled to have separation benefits calculated according to his employment classification, which shall be based upon plaintiff's status, or his position at Lyondell, at the time of his termination. The employee classification of the plaintiff's position at the time of his termination from Lyondell shall be determined by the employee classification that the plaintiff's position

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 53 of 62 PageID: 2135
Case 3:12-cv-01781-FLW-TJB    Document 45-1    Filed 12/13/13    Page 115 of 115 PageID: 658

Page 5

Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458
**(Cite as: 2001 WL 1667300 (E.D.Pa.))**

would have been assigned under the ARCO employee classification system. Thus, pursuant to the Plan, the plaintiff is entitled to receive benefits based upon his status as a Principal Research Advisor, as titled by ARCO, or Research Scientist V, as renamed by Lyondell. Plaintiff's employee classification at the time of his termination was therefore "D" and, accordingly, he was entitled to benefits in the amount of $157,575.60. Since the plaintiff has received separation benefits in the amount of $50,116.50, the plaintiff is entitled to an additional $107,459.10.[FN4]

> FN4. . The plaintiff also requests prejudgment interest. Although ERISA does not explicitly provide for prejudgment interest, the Third Circuit has recognized that "[i]nterest on delayed ERISA benefits is an equitable remedy left to the discretion of the trial court." *See Holmes v. Pension Plan of Bethlehem Steel Corp.,* 214 F.3d 124, 131 (3d Cir.2000). Prejudgment interest is to be "awarded when the amount of underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Anthuis v. Colt Industries Operating Corp.,* 971 F.2d 999, 1010 (3d Cir.1992) (quoting *Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 750 (8th Cir.1986)). Nevertheless, even though the Third Circuit has determined that the court has the authority to award prejudgment interest, such a determination does not mean that the party need not prove the appropriate amount of interest. The plaintiff in this case has provided no basis for determining prejudgment interest, other than directing the court to the Internal Revenue Service's adjusted prime rate for overpayments as prescribed in 26 U.S.C. § 6621(a)(1). The plaintiff provides no calculations upon which to base a prejudgment

interest award. A party seeking interest has a burden of producing calculations upon which the court may base the interest award, so that the defendants have an opportunity to object to the calculations. It is not the job of the court to conduct the plaintiff's calculations for him.

III. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

An appropriate order follows.

E.D.Pa.,2001.
Pazos v. Lyondell Chemical Co.
Not Reported in F.Supp.2d, 2001 WL 1667300 (E.D.Pa.), 27 Employee Benefits Cas. 1458

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 55 of 62 PageID:
Case 3:12-cv-01781-FLW-TJB    Document 45-5    Filed 12/13/13    Page 41 of 115 PageID: 584
2137

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
(Cite as: 2007 WL 2593704 (E.D.Pa.))

C

United States District Court,
E.D. Pennsylvania.
Jeffrey CAPPUCCIO
v.
PFIZER, INC.

Civil Action No. 2:07-CV-0549-LDD.
Aug. 31, 2007.

Brian P. McCafferty, Kenney Lennon & Egan PC,
Plymouth Meeting, PA, for Jeffrey Cappuccio.

Sara A. Begley, Reed Smith LLP, Philadelphia, PA,
Daniel E. Wille, Reed Smith LLP, Pittsburgh, PA, for
Pfizer, Inc.

MEMORANDUM
DAVIS, J.
**1** Presently before the Court are Defendant's
Motion for Summary Judgment (Doc. No. 14), Plain-
tiff's Response in Opposition (Doc. No. 17) and De-
fendant's Reply thereto (Doc. No. 24). For the reasons
set forth below, summary judgment will be granted in
favor of Defendant on all of Plaintiff's claims.

I. FACTUAL BACKGROUND [FN1]

> FN1. The following facts are undisputed
> unless otherwise noted.

Plaintiff Jeffrey Cappuccio is a former employee
of Defendant Pfizer, Inc. Prior to working for Pfizer,
he was employed by Pharmacia Corporation from
approximately 1997 to 2003. Declaration of Jeffrey
Cappuccio ("Cappuccio Decl."), at ¶ 1. In July 2002,
Pharmacia agreed to be acquired by Pfizer, and the
merger took formal effect on April 16, 2003. Def.'s

Statement of Material Facts ("DSMF"), at ¶¶ 7, 11.
Cappuccio accepted an offer of employment from
Defendant shortly before the merger, and began
working for Pfizer as a District Sales Manager in the
Mid-Atlantic Region in April 2003. Id., at ¶ 10. At this
time, he was assigned to the Allentown District. See
Def.'s Motion, Ex. 2, PLF0037. This sales territory
included much of eastern Pennsylvania, extending
south from the New York state border through
Scranton, Allentown, King of Prussia and east through
Jenkintown and Levittown. Cappuccio Decl., at ¶ 3.
The Allentown District did not extend to Philadelphia.

In September 2004, Plaintiff learned that Pfizer
had plans to carry out a "Field Force Optimization"
("FFO") in the immediate future. Cappuccio Decl., at
¶ 4. Under the FFO, Pfizer reevaluated the placement
of all of its District Sales Managers and made geo-
graphic adjustments based on, inter alia, the em-
ployee's product experience, performance and career
progression, if necessary. DSMF, at ¶¶ 16-19. On
March 21, 2005, Plaintiff received a "formal phone
call" from his Regional Manager explaining that under
the FFO, as of September 1, 2005, his assigned sales
territory would be modified to consist of North Phil-
adelphia, Northeast Philadelphia, Levittown and Jen-
kintown. Cappuccio Decl., at ¶ 6. Other than a change
of geographic assignment, his position, base salary,
target bonus, and general responsibilities were to
remain unchanged under the FFO. Declaration of Ann
Hodges [FN2] ("Hodges Decl."), at ¶¶ 11-12, 17. Pfizer
did not require Plaintiff to move his residence as part
of the reassignment; at all relevant times, Plaintiff
lived in Horsham, Pennsylvania. Compl., at ¶ 1;
DSMF, at ¶ 24. However, Plaintiff viewed the FFO as
a "constructive demotion or discharge" because he
would have been "reassigned to a smaller and less
desirable sales territory, and given less responsibility
and potential for advancement than the position [he]
had originally accepted with Pfizer back in 2003."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 56 of 62 PageID:
2138
Case 3:12-cv-01781-FLW-TJB   Document 45-5  Filed 12/13/13   Page 42 of 115 PageID: 585

Page 2

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
(Cite as: 2007 WL 2593704 (E.D.Pa.))

Cappuccio Decl., at ¶ 13. Nevertheless, there is no evidence that Plaintiff informed anyone at Pfizer of these views prior to his resignation. *See* Cappuccio Decl., at ¶ 15. On June 2, 2005, Plaintiff resigned his position as District Sales Manager of the Allentown District:

> FN2. Ann Hodges is Director of Human Resources for Defendant Pfizer. Declaration of Ann Hodges, at ¶ 1.

*2 This letter shall serve as my formal resignation from Pfizer. At this time, I have decided to pursue a career opportunity outside of the organization. This was a very difficult decision for me to make because my experience with Pfizer has been a positive one ... However, I feel that this new position affords me the opportunity to achieve my goals for future career advancement in a more commutable location ... My last effective date of employment with the company will be Friday, June 17, 2005.
Def.'s Motion, Ex. 1, DEF000128. Pfizer subsequently accepted Plaintiff's resignation effective June 18, 2005. *Id.,* DEF000125.

While Plaintiff was employed at Pfizer, he was covered by the Pharmacia Separation Benefit Plan ("Separation Plan") FN3, the Pfizer Annual Incentive Plan ("AIP") and had received a number of company stock options. *Id.,* Ex. 2, PLF0037-PLF0038. The Separation Plan is a "formal employee welfare benefit plan" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.,* Ex. 1, DEF000295 at § 1.01. It provided former Pharmacia employees with severance benefits in the event "they separate from [Pfizer] due to an 'Acquisition Termination'." *Id.,* Ex. 2, PLF0021. "Acquisition Termination" is "a termination of employment within two years of the Acquisition that is involuntary or that is as a result of his or her rejection of an offer of continued employment with the Company or an affiliate if such employment is not a Comparable Position." *Id.* There is no dispute that the "Acquisition" for purposes of the

Separation Plan occurred on April 16, 2003. "Comparable Position" is further defined as:

> FN3. The Separation Plan was modified following Pharmacia's merger with Pfizer by the Pfizer Acquisition Compensation and Benefits Implications for U.S.-Based Pharmacia Employees. *See* Def.'s Motion, Ex. 2, PLF0018-PLF0036. All discussions of Plaintiff's entitlement to severance benefits in this Memorandum will refer to the terms of the Separation Plan, as modified.

employment with the Company or a successor employer, in a position that would not constitute a demotion under Pharmacia's compensation guidelines or is two or more levels lower on a Company-recognized career ladder, provided that, upon an Acquisition Termination, it shall not constitute a Comparable Position if the Company requires the employee to relocate more than fifty (50) miles within the state in which the employee's principal business location is located immediately prior to such relocation or the employee's principal business location is relocated to a different state or the employee is required to materially increase his/her business travel.
*Id.,* Ex. 2, PLF0021.

The AIP is a performance-based incentive award plan which provided eligible employees with annual bonuses depending on individual, business unit and overall company performance. DSMF, at ¶ 14. The 2005 AIP provided that employees who are "terminated for cause or for unsatisfactory performance" or who "voluntarily leave the Company" during the plan year will "forfeit" their AIP payout for that year. Def.'s Motion, Ex. 1, DEF000261. However, "if employment is terminated for any other reason ... [the employee] will be eligible for a prorated AIP payout." *Id.*

Plaintiff was also awarded a number of options

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 57 of 62 PageID:
2139
Case 3:12-cv-01781-FLW-TJB    Document 45-5    Filed 12/13/13    Page 43 of 115 PageID: 586

Page 3

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
(Cite as: 2007 WL 2593704 (E.D.Pa.))

for the purchase of Pfizer stock in 1998 and 2000.[FN4] DSMF, at ¶¶ 2, 5. There is no dispute that the options at issue were fully vested at the time of Plaintiff's separation from Pfizer and thus were exercisable by Plaintiff. Under the terms of these original grants, however, the 1998 and 2000 options "shall cancel on the termination date of the Optionee" except where employment terminates as a result of death, disability, "normal retirement," or "under terms approved by the Compensation Committee of the Board of Directors." *Id.,* at ¶¶ 4, 6; Def.'s Motion, Ex. 1, DEF000345-DEF000346; DEF000351.

> **FN4.** When the options were awarded to Plaintiff, they were for the purchase of Pharmacia stock. Following Pfizer's acquisition, the options were converted to those for the purchase of Pfizer stock. Def.'s Motion, Ex. 2, PLF0036. However, the terms governing the exercise and cancellation of those Pfizer options remain as governed by the original terms of the option grants in 1998 and 2000. *Id.* ("the Terms, Conditions and Provisions of each stock option grant you hold will govern").

*3 Prior to separating from Pfizer on April 22, 2005, Plaintiff inquired of Merrill Lynch, Pfizer's designated broker for its employees' exercise of their stock options, as to how his options would be affected if he left the company. *See* Def.'s Motion, Ex. 1, DEF000338 [FN5]. The representative, "Lee," indicated that he did not have the information pertaining to Plaintiff's pre-2002 options offhand, but advised Plaintiff to "review all of the documents received with the grant, which would include the terms and conditions associated with the grant." *Id.,* at DEF000338-DEF000339. Plaintiff explained that he knew when his options would expire, but explicitly inquired: "if I were to voluntarily terminate, is there any action I need to take with those options within a certain period of time?" *Id.,* at DEF000339. Lee stated that he would research the terms of Plaintiff's

pre-2002 options and would call Plaintiff back with the information. *Id.* Five days later, Merrill Lynch's electronic records indicate that Lee left a message on Plaintiff's voicemail and asked Plaintiff to call him back to discuss the research request pertaining to the options. *Id.,* at DEF000341. Plaintiff disputes ever receiving this message. Cappuccio Decl., ¶ 12. The next time Plaintiff called Merrill Lynch with regard to his stock options was on June 23, 2005, after he had separated from Pfizer. *Id.,* at ¶ 14. At this point, Merrill Lynch advised him that his 1998 and 2000 options had been canceled by Pfizer. Def.'s Motion, Ex. 1, DEF000342. Plaintiff learned that his options had terminated as of the effective date of his resignation. Cappuccio Decl., at ¶ 14.

> **FN5.** Based on the declaration of Craig Long, a Merrill Lynch Client Relationship Manager, telephone calls from Pfizer employees to Merrill Lynch pertaining to Pfizer stock options are digitally recorded and retained in the regular course of business. Def.'s Reply, Ex. C, Declaration of Craig Long, at ¶ 4. It would appear that such recordings and transcripts derived therefrom would be admissible at trial pursuant to the business records exception to the hearsay rule, provided they were properly authenticated and the proper foundation for them established. Fed.R.Evid. 803(6).

**II. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "material fact" is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
**(Cite as: 2007 WL 2593704 (E.D.Pa.))**

2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must accept all of the non-movant's statements as true and make all reasonable inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 256. A non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. A party cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Anderson,* 477 U.S. at 248; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Summary judgment is appropriate where a party fails to make a sufficient showing on an essential element of his case for which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323.

### III. DISCUSSION

*4 Plaintiff instituted the instant action based on Defendant's alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Pennsylvania Wage Payment and Collection Law ("WPCL"). In particular, Plaintiff seeks recovery of (1) severance benefits under the Separation Plan, (2) a prorated incentive bonus under the AIP for 2005, and (3) the right to exercise his 1998 and 2000 stock options. His claim of severance benefits is made under ERISA, whereas his claims for the bonus payment and stock options are made pursuant to the WPCL.

### A. ERISA Claim Under Separation Plan

Plaintiff claims that he is eligible for severance pay pursuant to the Separation Plan. However, Defendant counters that Plaintiff is not entitled to any severance benefits because (1) Defendant is not the proper party for a claim of ERISA benefits; and in any

event, (2) Plaintiff does not qualify for benefits under the explicit terms of the Separation Plan.

ERISA provides that claims for benefits arising out of an ERISA plan should be brought against the plan as a separate entity. 29 U.S.C. § 1132(d)(1)-(2); *see, e.g., Mein v. Carus Corp.,* 241 F.3d 581, 584 (7th Cir.2001). The Third Circuit has held that an employer may be a proper party in an ERISA suit for the recovery of benefits if the employer is a fiduciary of the plan at issue. *Curcio v. John Hancock Mutual Life Ins. Co.,* 33 F.3d 226, 234 (3d Cir.1994); *Vaughn v. Metro. Life Ins. Co.,* 87 F.Supp.2d 421, 425 (E.D.Pa.2000). Employers who are plan administrators, whether in a *de facto* or *de jure* capacity, may also be liable for benefits. *Curcio,* 33 F.3d at 234 ("ERISA makes clear that a fiduciary is one that maintains discretionary authority or discretionary responsibility in the administration of the plan"); *see also Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339, 350 (5th Cir.2003) (employer is proper defendant in ERISA claim for benefits where the ERISA plan "has no meaningful existence separate from [the employer]").

In this case, however, the Court need not resolve the question of whether Pfizer is a proper party to the ERISA claim [FN6] because regardless of to whom the claim is directed, Plaintiff is not entitled to severance benefits. Here, the Separation Plan unambiguously provides that an employee may obtain severance pay only where the employee "separate[s] from [Pfizer] due to ... a termination of employment within two years of the Acquisition that is involuntary or that is as a result of his or her rejection of an offer of continued employment with the Company or an affiliate if such employment is not a Comparable Position." Def.'s Motion, Ex. 2, PLF0021. As this language makes clear, the most fundamental prerequisite to demonstrating an entitlement to severance benefits is a termination of employment within two years of April 16, 2003. In this case, it is undisputed that Plaintiff did not separate from or otherwise terminate his employment

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 59 of 62 PageID:
2541
Case 3:12-cv-01781-FLW-TJB   Document 43-5  Filed 12/13/13   Page 45 of 115 PageID: 588

Page 5

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
(Cite as: 2007 WL 2593704 (E.D.Pa.))

with Pfizer until June 2005. Accordingly, Plaintiff is not eligible for severance benefits under the plain terms of the Separation Plan.[FN6] Because Plaintiff has not demonstrated the existence of an issue of fact for trial, Defendant Pfizer is entitled to summary judgment on Plaintiff's ERISA claim.

> FN6. To the extent Plaintiff, in his opposition to Defendant's instant Motion for Summary Judgment, asks for leave to amend his Complaint to add the Separation Plan as a party to the litigation, the Court finds it unnecessary to consider the request because of its conclusion as to the merits of the underlying ERISA claim. Even if the request for leave is procedurally proper, it must be denied because amendment would be futile. See, e.g., Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir.2000).

> FN7. Alternatively, Plaintiff argues that because he received "an offer" within two years of the acquisition of a "non-comparable position," namely, he was notified in March 2005 that his sales territory would be changed in September 2005 to consist of North Philadelphia and surrounding areas, he is entitled to severance pay. Even assuming, arguendo, that his supervisor's phone call to him describing his new sales territory was "an offer" and that the reassignment of sales districts was not a "comparable position" under the Separation Plan, Plaintiff's argument would nevertheless fail because he has proffered no evidence that he ever rejected the offer prior to resigning in June 2005, outside of the two-year window. As such, no timely termination could have occurred "as a result" of the rejection of the offer as is required by the plan terms.

B. Pennsylvania Wage Payment Collection Law Claims

*5 Plaintiff also raises Pennsylvania Wage Payment Collection Law claims for a prorated bonus under Pfizer's 2005 Annual Incentive Plan and for the reinstatement of his 1998 and 2000 stock options. 43 Pa. Cons.Stat. § 260.1 et seq. The WPCL provides that "[e]very employer shall pay all wages ... due to his employees." 43 Pa. Cons.Stat. § 260.3(a). Courts have uniformly held that the WPCL creates a statutory remedy on behalf of employees for the recovery of wages and benefits owed to them by contract but wrongfully withheld by employers. See, e.g., Oberneder v. Link Computer Corp., 548 Pa. 201, 696 A.2d 148, 150 (Pa.1997); Gautney v. Amerigas Propane, Inc., 107 F.Supp.2d 634, 646 (E.D.Pa.2000).

a. Incentive Plan Benefits

Bonus payments are recoverable under the WPCL. See 43 Pa. Cons.Stat. § 260.2a (WPCL "wages" include "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation"); Gautney, 107 F.Supp.2d at 646 (bonuses included in "wages"). As with all WPCL claims, the terms of the particular contract at issue control in determining whether the claimed bonus is "due" to the employee. Weldon v. Kraft, 896 F.2d 793, 801 (3d Cir.1990); Gautney, 107 F.Supp.2d at 646.

The contract in this case is Pfizer's 2005 Annual Incentive Plan. In general, to be eligible for bonus payments under the AIP, the employee must have worked for Pfizer for the entire plan year. In particular, AIP provides that if the employee is "terminated for cause or for unsatisfactory performance" during the year or "voluntarily leave[s] [Pfizer] prior to January 1 of the following Plan year," the employee will "forfeit any AIP payout" for that year. Def.'s Motion, Ex. 1, DEF000261. However, "if [ ] employment is terminated for any other reason (such as position elimination), [the employee] will be eligible for a prorated AIP payout." Id. Elsewhere in a section of the employee brochure summarizing AIP changes for 2005, it states "[p]articipants who leave the AIP be-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 60 of 62 PageID:
Case 3:12-cv-01781-FLW-TJB    Document 45-5    Filed 12/13/13    Page 46 of 115 PageID: 589

Page 6

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
(Cite as: 2007 WL 2593704 (E.D.Pa.))

fore the end of the Plan year for reasons of retirement, ... separation due to restructuring/job elimination, death or commencement of long-term disability [ ] will be eligible to receive a prorated payment." *Id.*, Ex. 1, DEF000250.

Based on this language, Plaintiff argues that the AIP prorated payout is keyed only to "separation," and "does not make any distinction between voluntary termination and involuntary termination." Pl.'s Resp. at 13 n. 5. Therefore, Plaintiff contends, without citation to any legal authority, that because Pfizer described the FFO which resulted in his new sales assignment as a "nationwide realignment" in its submissions before this Court, the FFO "was clearly a 'restructuring' " such that his termination "in connection with" that restructuring entitles him to a prorated payout for 2005. *Id.* at 13.

The Court disagrees. First, even viewing the record in the light most favorable to Plaintiff, no reasonable trier of fact could find that his separation from Pfizer in 2005 was anything other than a voluntary resignation. There is no dispute that Plaintiff's position title, general responsibilities, base salary and benefits were to have remained the same both before and after the FFO. Furthermore, Plaintiff has failed to put forth any competent evidence that his total compensation, based on potential AIP bonuses, would have been lower under the FFO as compared with that of his pre-FFO assignment. *Cf. Kroen v. Bedway Sec. Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628, 634 (Pa.Super.1993) (whether demotion constituted constructive discharge where employee's weekly hours were reduced from forty to sixteen and hourly pay rate was reduced from $5.50 to $4.00, resulting in an approximate 71% reduction in weekly wages, was fact issue for jury). The only changes were that Plaintiff would have, some months *after* he actually left Pfizer, been responsible for a sales territory he considered to be "less desirable," and would have had to "re-establish business relationships with the majority of the accounts in [his] new geography." Cappuccio

Decl., at ¶¶ 13, 9. From this, no reasonable factfinder could conclude that Pfizer constructively terminated Cappuccio such that he is entitled to a prorated bonus payment for 2005. *See, e.g., Carlson v. Cmty. Ambulance Svcs., Inc.,* 824 A.2d 1228, 1232 (Pa.Super.2003) (constructive discharge requires that working conditions are so intolerable that a reasonable person would have been forced to resign).

**\*6** Second, there was plainly no "job elimination" in this case. Even assuming, *arguendo*, that the FFO was a "restructuring" under the AIP, it is not a reasonable reading of the contract language that "separation due to restructuring/job elimination" encompasses *all* separations subsequent to the FFO, including the voluntary resignations of employees who were not objectively adversely impacted by the FFO. Here, no trier of fact could find, notwithstanding Plaintiff's subjective speculation that the new assignment would have hampered his career advancement prospects and his ability to meet sales goals, that his separation from Pfizer was a "separation *due to* restructuring/job elimination" under the AIP. *See, e.g., Dyszel v. Marks,* 6 F.3d 116, 129-30 (3d Cir.1993) ("self-serving allegations are entitled to little weight, and are insufficient to raise triable issue of fact"; "objective, credible evidence" required); *Boykins v. Lucent Technologies, Inc. ..* 78 F.Supp.2d 402, 408 (E.D.Pa.2000) ("[s]peculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact"). Because there is no genuine dispute that Plaintiff voluntarily resigned his employment prior to January 1, 2006, he is not entitled to any AIP payment for 2005. Accordingly, summary judgment on Plaintiff's WPCL claim as to the Annual Incentive Plan will be granted for Defendant.

**b.** *Pfizer Stock Options*

With regard to the stock options, Plaintiff cannot recover under the WPCL. While there is no dispute that the options at issue were fully vested prior to Plaintiff's separation from Pfizer and thus may have been wages "due" to him, that Plaintiff failed to ex-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:12-cv-01781-FLW-TJB    Document 92-5    Filed 09/30/16    Page 61 of 62 PageID:
Case 3:12-cv-01781-FLW-TJB    Document 45-5 2543 Filed 12/13/13    Page 47 of 115 PageID: 590

Page 7

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
**(Cite as: 2007 WL 2593704 (E.D.Pa.))**

ercise them in accordance with the terms of their grant is fatal to his claim. *See* Williston on Contracts § 46:12 (4th ed.1990) (option contracts are irrevocable offers; "the party giving the option is protected only by the condition that the optionee can only exercise it strictly ... within a specified time and otherwise in accordance with specified terms"). In this case, Plaintiff does not claim that he did not receive the original grant documents providing for the terms of the options' cancellation or that he did not understand them. He seems merely to be contending that Pfizer had some affirmative obligation to inform him of his rights as to his stock options. However, he has identified no contractual provision imposing such a duty on Defendant.[FN8] *See Sheils v. Pfizer*, 156 Fed. Appx. 446, 451 (3d Cir.2005) (rejecting identical argument that Pfizer prevented employee from exercising his options by failing to inform him how to exercise the options; the option agreements do not impose such duties on the optionor). Nor has he demonstrated any evidence that Defendant prevented him from timely exercising his options by wrongfully terminating him. *Cf. Scully*, 238 F.3d at 506 (employer violated WPCL where it wrongfully terminated former employee during valid employment contract term and subsequently rejected the employee's attempted exercise of options, the *exercise* of which was explicitly provided for in the employment contract). More fundamentally, the record is devoid of any evidence that Plaintiff ever attempted to exercise his options at all prior to leaving Pfizer, let alone that Pfizer refused to let him to do so. Indeed, in his April 2005 conversation with Merrill Lynch, Plaintiff only inquired as to the potential impact of a voluntary separation on his exercise rights. Def.'s Motion, Ex. 1, DEF000338. In this case, no reasonable factfinder could determine that Plaintiff's own failure to exercise his options could have been the result of any breach of a contractual obligation by Pfizer. Therefore, WPCL cannot offer Plaintiff any relief.

FN8. That there is a dispute as to whether Merrill Lynch ever called Plaintiff to follow up on his phone inquiry is irrelevant to his WPCL claim; nothing prevented Plaintiff from calling back himself prior to his resignation. *Sheils v. Pfizer*, 156 Fed. Appx. 446, 451 (3d Cir.2005) (no WPCL claim where plaintiff's phone calls inquiring as to the terms of his options went unreturned, employee's own "neglect or inadvertence" was to blame).

**IV. CONCLUSION**

**\*7** In conclusion, for the reasons articulated above, Defendant Pfizer is entitled to summary judgment on all of Plaintiff's claims. An appropriate Order and Judgment follows.

*ORDER AND JUDGMENT*

AND NOW, this 30th day of August 2007, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14), Plaintiff's Response in Opposition (Doc. No. 17) and Defendant's Reply thereto (Doc. No. 24), for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED as follows:

1. Defendant's Motion (Doc. No. 14) is GRANTED.

2. Judgment is entered in favor of Defendant Pfizer, Inc. and against Plaintiff Jeffrey Cappuccio on all counts.

3. The Clerk is directed to mark the case closed for statistical purposes.

E.D.Pa.,2007.
Cappuccio v. Pfizer, Inc.
Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475

**END OF DOCUMENT**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2593704 (E.D.Pa.), 42 Employee Benefits Cas. 1475
**(Cite as: 2007 WL 2593704 (E.D.Pa.))**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.