**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————— :
                                                         :
RICHARD T. AICHER, JR.,            :
                                                         :          Civil Action No.: 12-1781 (FLW)
                    Plaintiff,            :
                                                         :
           v.                                       :
                                                         :                **OPINION**
IBEW LOCAL UNION NO. 269      :
JOINT TURST FUNDS OFFICE,    :
*et al.*,                                          :
                                                         :
                    Defendants.        :
———————————————————— :

**WOLFSON, District Judge:**

Pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1132(a), *et seq.*, Plaintiff Richard T. Aicher, Jr. ("Aicher" or "Plaintiff") brought this suit, *inter alia*, to recover past pension benefits that Plaintiff alleges were improperly denied by the Board of Trustees of IBEW Local Union 269 Pension Plan (the "Trustees"). Plaintiff also names the following defendants in his Complaint: IBEW Local Union No. 269 Joint Trust Funds Office (the "Joint Funds Office"), Board of Trustees of IBEW Local Union No. 269 Annuity Fund, Board of Trustees of IBEW Local Union No. 269 Health & Welfare Fund, Board of Trustees of IBEW Local Union No. 269 Supplemental Welfare Fund, Board of Trustees of IBEW Local Union No. 269 Joint Apprenticeship Fund[1], and IBEW

---

[1]        These various Boards of Trustees are also referred to as the "Joint Board."

Local Union No. 269 Pension Plan (the "Plan")(collectively, "Defendants"). Plaintiff previously moved for partial summary judgment on Count III, illegal interference under ERISA, and Count IV, recovery of pension payments. Having found that the Trustees' stated reasons for denying Plaintiff certain retirement benefits did not survive judicial scrutiny, the Court stayed the case,[2] and remanded this matter for further administrative review. Because the Trustees, on remand, sustained their previous denial of benefits, the parties have brought their differences back to court, and in the instant matter, Plaintiff, once again, moves for summary judgment on Counts III and IV, arguing that the Trustees' decision is plainly erroneous under the applicable ERISA standards. Plaintiff also seeks attorney's fees and costs pursuant to ERISA's fee-shifting provision.

Defendants also move for summary judgment, but not on merits of the claims; rather, Defendants argue that certain named defendants should be dismissed from suit. For the reasons set forth herein, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part as follows: 1) defendant IBEW Local Union No. 269 Pension Plan is dismissed as a defendant in Counts I and II; 2) defendants IBEW Local Union No. 269 Pension Plan and Board of Trustees of IBEW Local Union No. 269 Pension Plan are the only proper defendants to be named in Counts III and IV, all other defendants are dismissed from those two counts.

Next, Plaintiff's motion for summary judgment is also **GRANTED** in part

---

[2] Plaintiff also brought retaliation and wrongful termination claims. Those claims were stayed pending remand.

and **DENIED** in part.  Summary judgment is granted as to Count IV, wrongful denial of ERISA benefits, and the total amount of the judgment awarded is $109,681.27, which includes an award of prejudgment interest in the amount of $636.47.  However, Plaintiff's motion is denied as Count III of the Complaint.  Plaintiff's application for attorneys' fees and costs is denied without prejudice.

## BACKGROUND

The following facts are not disputed, unless otherwise noted.  From 1971 to 1992, Aicher worked as an electrician for employers who were parties to the Collective Bargaining Agreement ("CBA") between IBEW Local Union No. 269 and the Mercer County Division of the Southern New Jersey Chapter of the National Electrical Contractors Association.  *See* Plaintiff's Statement of Undisputed Facts ("Pl's Facts "), ¶ 1.  Thereafter, from 1992 to 2010, Aicher was employed as the Assistant Business Manager ("ABM") of the Union, *id.* at ¶ 2, and his job duties included "organizing, representing the Union in grievances and contract negotiations" with other organizations.  *Id.* at ¶ 3.  According to Plaintiff, in 2007, as the ABM, he "began serving in an unpaid role as managing trustee of the Joint Funds Office," which work was unrelated to the position of the ABM.  *Id.* at ¶¶ 6-7.  Importantly, Defendants do not dispute that Plaintiff took on this task during the relevant time period.  *See* Defendants' Statement of Undisputed Facts (Defs' Facts"), ¶ 6.

The Joint Board of the Trustees of the Union's benefit plans established the Joint Funds Office to administer employee contributions to the Union's benefit plans.  *Id.* at ¶ 4.  The Director of the Joint Funds Office was responsible

for the day-to-day operations of the office.  *Id.* at ¶ 5.  In June 2010, Stephen Aldrich, the Union's newly elected Business Manager, informed Plaintiff that he intended to eliminate Plaintiff's ABM position and terminate the Director of the Joint Funds Office, and appoint Plaintiff as the full-time Administrative Manager of the Joint Funds Office.  *Id.* at ¶ 9.  Plaintiff accepted the offer, and assumed that position on July 12, 2010. His salary was approximately 30% less than his previous position as the ABM. *Id.* at ¶¶ 11, 24.  As the Administrative Manager, Plaintiff's job duties were managerial and administrative in nature; they included "supplying information requested by the accounting and financial professionals who handled the funds' accounting, audits and investments, collecting delinquent contributions from participating employers and responding to questions from plan participants." *Id.* at ¶ 13.  According to Plaintiff, he did not perform estimates, supervise electricians or conduct electrical work at this position. *Id.* at ¶ 14.

Plaintiff was a participant in the Plan, which is governed by ERISA.  *Id.* at ¶ 20.  As of January 1, 2004, based on Plaintiff's then-age of fifty-two and his thirty-three years of credited service, Plaintiff was 100% vested in his pension, and he was eligible to receive normal retirement pension payments. *See* Pension Plan, Article IV(2)(b); Pl's Facts, ¶ 22.  Since Plaintiff did not retire, however, he continued to contribute to his pension.

According to Plaintiff, in June 2010, before he accepted the position as the Administrative Manager, Plaintiff contemplated taking his pension to offset the reduction in his pay, and he emailed the Plan's Attorney, Michael T. Scaraggi,

Esq., to inform Mr. Scaraggi of his intentions.  Pl's Facts, ¶¶ 26, 30.  Indeed, after Mr. Scaraggi and Plaintiff discussed his pension payments, Mr. Scaraggi prepared a form through which Plaintiff could waive his right to accrue pension credits under the Plan.[3]  *Id.* at ¶¶ 27-28, 32.  On August 27, 2010, Plaintiff submitted an application for pension benefits to the Third-Party Administrator of the Plan, I.E. Schaffer (the "Plan Administrator"), along with his signed waiver of pension credits.  *Id.* at ¶¶ 33-34.  On that same day, Plaintiff met with the Trustees of the Plan and informed them of the waiver of his right to accrue pension benefits, that he was exercising his right to receive a retirement pension from the Plan, and that he was continuing his employment as the Administrative Manager for the Joint Funds Office.  *Id.* at ¶ 36.

Subsequently, on September 3, 2010, the Joint Board held a meeting to discuss Plaintiff's proposed arrangement to retire for pension purposes and continue to work at the Joint Funds Office.  *Id.* at ¶ 42.  The Joint Board expressed concerns over the impact of Plaintiff's proposal on the "rank and file union members."  *Id.* at ¶ 43.  According to Plaintiff, because of "office politics," the Trustees "determined that Aicher either had to be a participant of all Benefit Funds including the Local 269 Pension Plan or retire."  *Id.* at ¶ 44.  And, Plaintiff claims that the Plan Administrator was instructed not to process Plaintiff's pension application.  *Id.* at ¶ 47.  Moreover, at that time, there was no written

---

[3]      According to Plaintiff, other Plan participants were receiving pension benefits while gainfully employed, including Ken Shea, the president of Carlin Electric, who was a Trustee of the Plan, and David Rowe, a former electrician who was performing estimates for Lessner Electric.  Pl's Facts, ¶ 29.  However, these facts are disputed by Defendants.

denial of Plaintiff's benefit request. *See id.* at ¶ 53. In fact, Plaintiff did not receive any written response to his pension application any time prior to Plaintiff's termination in December 2011. *Id.* at ¶ 61.

In November 2011, Plaintiff hired an attorney to correspond with the Trustees regarding his pension application. *Id.* at ¶ 62. In that letter, the attorney advised that "if [Aicher] d[oes] not receive a written determination within ten (10) days, [Aicher] would construe the silence as a denial and file an appeal; and, if the appeal were ignored, he would file suit." *Id.* at ¶ 63. On December 15, 2011, three weeks after Plaintiff's attorney had insisted that the Trustees address his pension claim, the Joint Board terminated Plaintiff's employment. *Id.* at ¶ 66.

On January 3, 2012, after Plaintiff's termination, the Plan Administrator approved Plaintiff's August 2010 application for pension benefits, which was effective January 1, 2012. *Id.* at ¶ 69. The approval did not set forth any reason for approving the pension application with an effective date of January 1, 2012, rather than September 1, 2010, as requested by Plaintiff. *Id.* at ¶ 70. Plaintiff appealed the decision to the Plan's Trustees, and claimed on appeal that he was entitled to receive pension benefits as of September 1, 2010, based on his age and years of service. *See id.* at ¶¶ 71-73. In that appeal, Plaintiff also argued that his request for pension payments from September 1, 2010, did not run afoul of the Plan, since his position as the Administrative Manager at the Joint Funds Office was not work in an electrical trade or craft.[4] *Id.* at ¶ 74.

_____

[4] As discussed *infra*, under Article VI(6)(b) of the Plan, "[i]f a Pensioner

On February 29, 2012, the Trustees, who oversaw the appeal, denied Plaintiff's claim for retroactive pension benefits. *Id.* at ¶ 79. In a one-page letter, the Trustees reasoned that Plaintiff was estoppped from claiming retroactive pension benefits because he (i) failed to raise the Trustee's failure to decide his claims for benefits at any time between August 27, 2010, when he submitted his pension claim, and his counsel's November 23, 2011 correspondence; and (ii) Plaintiff had received pension credits during his employment as Administrative Manager. *See* Letter Decision dated February 29, 2012. The decision did not address any issue relating to whether Plaintiff's employment as Administrative Manager constituted work in an electrical trade or craft.

In March 2012, Plaintiff initiated this suit claiming that Defendants: (1) wrongfully terminated him; (2) retaliated against him for pursuing his pension benefits; (3) interfered with Plaintiff's right to receive a retirement pension from the Plan; and (4) improperly denied Plaintiff his retirement pension. Plaintiff claims that he is entitled to retroactive pension payments. In March 2014, both parties moved for summary judgment on Counts III and IV of the Complaint. This Court issued an Opinion and Order dated October 20, 2014, denying both motions. The Court rejected the Trustees' stated reasons for the denial of

---

accepts employment in the electrical construction industry, pension payments accrued after January 1, 2002 and payable prior to attainment of age 62 shall immediately cease as of the first of the month next following the date of such employment, except if employed as a teacher/instructor of an IBEW approved training program or as an electrical inspector." Pension Plan, Article VI(6)(b). The gist of Plaintiff's argument regarding why he is entitled to receive pension payments while working as the Administrative Manager of the Joint Funds Office, is that the position of the Administrative Manager was not work in the "electrical construction industry" as defined under Article VI(6)(b).

Plaintiff's pension benefits, but remanded Plaintiff's claim for retroactive pension benefits to the Trustees to make the determination, for the first time, whether Plaintiff's employment as the Administrative Manager of the Joint Funds Office disqualified him from pension benefits under Article VI(6)(b).

On June 29, 2015, following this Court's decision, Plaintiff submitted a claim letter to the Trustees, asserting three bases entitling Plaintiff to his requested pension: 1) Article VI(6)(b) is unenforceable because it violates ERISA's non-forfeiture provision; 2) Plaintiff's employment as Administrative Manager was not in the "electrical construction industry"; and 3) Plaintiff's employment at the Joint Funds Office was not in the same "trade or craft" as his prior employment as an electrician or the ABM. *See* O'Connor Correspondence dated June 29, 2015. In response, on September 10, 2015, the Trustees denied Plaintiff's claim based solely on their conclusion that the position of Administrative Manager was in fact "in the electrical construction industry." *See* Scaraggi Correspondence dated September 10, 2015. Once the second denial was issued, Plaintiff returned to this Court and appealed the Trustees' 2015 decision.

In the instant matter, Plaintiff, once again, moves for summary judgment on Counts III and IV of the Complaint. Defendants, on the other hand, do not seek summary judgment on the merits as to any of the claims; instead, Defendants contend that a number of defendants must be dismissed from this lawsuit because Plaintiff has failed to assert any liability against them. I will address the substance of Defendants' motion, first.

**DISCUSSION**

## I.      Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if

not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972

F.2d 53, 55 (3d Cir. 1992).

## II.    Defendants' Motion for Summary Judgment

Counts I and II of the Complaint relate to Plaintiff's allegations of wrongful termination and retaliation, respectively, in violation of ERISA.    Without identifying which defendant is liable for such alleged acts, Plaintiff, in a wholesale manner, avers that Defendants, collectively, are answerable to these claims.    In that regard, Defendants argue that because the alleged conduct in these two counts involves Plaintiff's termination from his employment as the Administrative Manager, only Plaintiff's then-employer, the Joint Funds Office, may be named in those two causes of action.

In response, Plaintiff maintains that because Defendants admitted in their Answer that the Joint Board, in addition to the Joint Funds Office, employed Plaintiff in his position as Administrative Manager, all of the members of the Joint Board can be named as defendants.    For support, Plaintiff points to the Management Agreement entered into by the various funds; the Agreement stated that "[t]he Joint Board shall employ an Administrative-Manager who shall be responsible generally to supervise the day-to-day operation of the Joint Board's Office."    Management Agreement, ¶¶ 2-3.    Based on that language, Plaintiff contends that he was hired, and supervised, by the Joint Board.    Plaintiff's argument is persuasive in this regard.    In fact, Defendants admit on this motion that it was the Joint Board that formally offered Plaintiff the Administrative Manager position.    *See* Defs' Facts, ¶ 10.    Tellingly, Defendant did not file a reply brief, responding to this particular argument.    In any event, while Defendants

insist that the Joint Funds Office was Plaintiff's only employer, they do not proffer any evidence to establish that the Joint Board took no part in supervising, or otherwise oversaw, Plaintiff's employment at the Joint Funds Office. Rather, based on Plaintiff's evidence, there is a genuine issue of material fact as to role that the Joint Board took in Plaintiff's employment. Therefore, I have no basis to dismiss the Joint Board, which consists of the various defendant-funds named in the Complaint, from Counts I and II. However, there is no dispute that defendant IBEW Local Union No. 269 Pension Plan was not Plaintiff's employer, and therefore, the Plan is dismissed as a defendant in Counts I and II.

Next, Defendants argue that all of the named defendants, with the exception of the Plan, should be dismissed from Counts III and IV. In those counts, Plaintiff alleges that Defendants, collectively, interfered with, and improperly denied, Plaintiff's application for his retroactive pension benefits. According to Defendants, based on Plaintiff's own allegation that it was the Plan that denied Plaintiff's claim for benefits, Counts III and IV can only be asserted against the Plan. Defendants reason that since Plaintiff asserts no wrongdoing against other defendants, except for the Plan, in Counts III and IV, they must be dismissed.

Indeed, there is no dispute that the Plan is properly named as a defendant in Counts III and IV. ERISA provides that claims for benefits arising out of an ERISA plan, such as the Plan in this case, should be brought against that plan as a separate entity. *See* 29 U.S.C. § 1132(d)(1)-(2). In fact, the Third Circuit has explained that a proper defendant in a claim for wrongful denial of benefits

under ERISA "is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan*, 311 Fed. Appx. 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)). The "defining feature of the proper defendant" for such a claim is whether the party "exercise[ed] control over the administration of benefits." *Id.* In that regard, other entities, such as an employer, may also be sued in an ERISA suit for the recovery of benefits if that entity exercises authority or control over 1) the management of the plan, 2) the management and disposition of the assets, or 3) the administration of the plan. *See Evans*, 311 F. App'x at 558.

Here, the Plan designates the Trustees of the IBEW Local Union No. 269 — which is a separate entity from the Joint Board — as the named fiduciary "who shall control and manage the operation and administration of the Plan, or delegate such responsibilities as permitted by the Agreement and Declaration of Trust, and shall establish rules, make determinations and interpret and decide all matters arising in connection with such administration and, in connection therewith, they shall act in all respects in accordance with the Agreement and Declaration of Trust." *See* Pension Plan, Article IX(1). While the Trustees designated a third-party claim administrator, I.E. Schaffer, to administer the claim in the first instance, the Trustees retain the authority to decide all claim matters related to the Plan. Indeed, here, Plaintiff appealed the Plan Administrator's initial denial to the Trustees, who ultimately denied Plaintiff's benefit claims.

On this motion, Plaintiff maintains that his employers, *i.e.*, the Joint

Funds Office and the Joint Board, are appropriate defendants in Counts III and Counts IV, because his employers instructed the Plan Administrator to ignore Plaintiff's pension application and instructed Mr. Scaraggi, the Plan's attorney, to inform Plaintiff that he had to make a choice between his benefits and his job. However, Plaintiff has proffered no evidence that the Joint Board directed the Plan Administrator to ignore Plaintiff's application. Rather, Plaintiff only cites to the deposition of Jonathan Levine, a representative of the Plan Administrator, who testified that Sherri Bowe, a representative from the Joint Funds Office, told him to "hold off" on processing Plaintiff's application. *See* Levine Dep., T65:12-20. But, Mr. Levine did not know who made that decision. *Id.* at T66:2-7. From Mr. Levine's testimony alone, Plaintiff surmises that the Joint Board and the Joint Funds Office must have instructed the Plan Administrator to hold Plaintiff's application in abeyance. This is not sufficient to meet Plaintiff's burden on this motion to establish that his employers affirmatively exercised control or authority over the management of the Plan. Importantly, Plaintiff, in his own Statement of Undisputed Material Facts, acknowledged that the *Trustees* made the determination that Plaintiff "either had to be a participant of all Benefit Funds including the Local 269 Pension Plan or retire." Pl's Facts, ¶ 44. *See, e.g., Murray v. Jeld-Wen Inc.*, No. 11-2302, 2013 U.S. Dist. LEXIS 3518 (M.D. Pa. Jan. 9, 2013) (entering judgment for employer/plan administrator where the plaintiff failed to produce evidence that created "legitimate question regarding whether [the employer] had some degree of control over the decision to deny [the plaintiff's] application for disability benefits" where another entity was identified

"as the claims administrator under the Plan with discretionary authority to interpret the Plan and make claim determinations"); *Narducci v. Aegon United States, Inc.*, No.10-955, 2010 U.S. Dist. LEXIS 134514, at *6-7 (D.N.J. Dec. 15, 2010)(dismissing nominal plan administrator where the plan specified that the claims administrator had discretionary authority to make benefit determinations because the plan administrator had "no role in determining benefits").

Accordingly, based on the record, I find that the Plan and the Trustees are the only proper defendants to be named in Counts III and IV, and all other named defendants are dismissed from these two counts.

## III.    Plaintiff's Motion for Summary Judgment

### A.    Level of Review

The threshold question the Court must determine is the appropriate standard of review for the Trustees' denial of pension benefits under ERISA.  On this point, Plaintiff argues that because the Trustees' determination that Plaintiff is not entitled to benefits is legal in nature, that decision must necessarily be reviewed *de novo* by this Court.  Defendant, however, does not respond to Plaintiff's position, but rather, argues that the Trustees' decision should be reviewed under the "arbitrary and capricious" standard.

Plaintiff advances, just as he did during the administrative review, three separate bases for receiving retroactive pension benefits.  First, Plaintiff submits that Article VI(6)(b) violates ERISA's non-forfeiture provision as a matter of law.  Second, the position of Administrative Manager was not in the electrical construction industry; and finally, that position was not in the same trade or

craft as an electrician or the ABM. To determine the level of review, each of these bases must be separately analyzed.

As to Plaintiff's first basis, Plaintiff correctly argues that this Court reviews *de novo* pure questions of law determined by an administrator. *See Burch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 148-49 (3d Cir. 1987), *aff'd in part, rev'd in part on other grounds*, 489 U.S. 101 (1989)(finding that "trustees only have discretion to decide those matters expressly delegated to them by the trust instrument," therefore, when the district court is confronted with legal questions, "the court must answer them *de novo*."); *Rosen v. Hotel and Restaurant Employees*, 637 F.2d 592, 597 (3d Cir. 1981) (ignoring arbitrary and capricious scope of review and determining equitable estoppel claim on the merits, without any deference to plan administrator); *Hannington v. Sun Life & Health Ins.*, 711 F.3d 226, 230-31 (1st Cir. 2013)("when a fiduciary's interpretation of the plan is based on a legal determination, review is *de novo*."); *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011) (noting that the deferential standard of review "does not apply to a plan administrator's determination of questions of law, such as whether a plan meets the statutory definition of a top-hat plan; a court reviews those questions *de novo*"); *Weil v. Ret. Plan Admin. Comm. of Terson Co.*, 913 F.2d 1045, 1049 (2d Cir. 1990) (same), *vacated on other grounds*, 933 F.2d 106 (2d Cir. 1991).[5]

_____

[5]    I must review *de novo* the Trustees' determination on the issue whether Article VI(6)(b) violates ERISA for another reason: the Trustee failed to address this basis in their decision. It is clear that when a plan administrator, in this case the Trustees, fails to provide a reason during the administrative review for rejecting a claimant's basis for benefits under ERISA, the district court must

However, contrary to Plaintiff's position, I must review the Trustees' determinations on Plaintiff's remaining bases for benefits under the arbitrary and capricious standard. Indeed, the Supreme Court has long held that a denial of benefits under ERISA is to be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Thus, where the plan affords the fiduciary discretionary authority, the fiduciary's interpretation of the plan "will not be dismissed if reasonable." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997)(quoting *Firestone*, 489 U.S. at 111). In other words, when a plan fiduciary has discretion to determine a claimant's eligibility for benefits, the plan fiduciary's decision is subject to review under an arbitrary and capricious standard. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009); *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009)("[C]ourts reviewing the decisions of ERISA plan administrators or fiduciaries . . . should apply a deferential abuse of discretion standard of review across the board[.]"). Put differently, the Third Circuit has advised that "the deferential standard of review of a plan interpretation is appropriate [] when the trust instrument allows the trustee to interpret the instrument and when the trustee has in fact interpreted the instrument." *Gritzer*, 275 F.3d at 296.

Here, as previously noted, the Trustees are designated as the named

---

review that "non-decision" *de novo*. *See Gritzer v. CBS, Inc.*, 275 F.2d 291, 296 (3d Cir. 2002); *see also Becknell v. Severance Pay Plan of Johnson & Johnson*, No. 13-4622(FLW), 2014 U.S. Dist. LEXIS 54684, at *12 (D.N.J. April 21, 2014).

fiduciary by the Plan. *See* the Plan, Article IX(1). In Article IX, entitled Administration, the Plan endows the Trustees with the sole discretion to establish rules, make claims determinations and, more importantly, the Trustees have the authority to interpret the terms of the Plan, and they "are the sole judges of the standard of proof required in any case, and they may adopt such formulas, methods and procedures as they consider advisable." *See* Article IX(1), (2). Clearly, based on the authority that the Trustees have been entrusted under the Plan, the deferential standard of review applies to any claim determinations and/or plan interpretations made by the Trustees.[6] *See Hatchigian v. IBEW, Local Union No. 98*, 532 Fed. Appx. 181, 183 (3d Cir. 2015)(applying the arbitrary and capricious standard of review to claim decisions made by union trustees when the plan had designated the trustees with authority to interpret the plan terms).

Under the deferential review, a decision is arbitrary and capricious only "if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (quotations and citations omitted). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Soubik v. Dir., Office of Workers' Comp. Programs,* 366 F.3d 226, 233 (3d Cir. 2004). To decide whether an administrator's

---

[6]     I note that Plaintiff has not raised any conflict of interest issues. But, even if he does, "as a multi-employer pension fund, as is the case here, the defendants do not pay beneficiaries from their own funds . . . and thus the Court need not be concerned about conflicts of interest." *Hatchigian*, 532 Fed Appx. at 183 n.1.

determination of benefits is arbitrary and capricious, courts "determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 855 (3d Cir. 2011)(quoting *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008)).[7]

### B. Count IV – Wrongful Denial of Benefits

#### 1. ERISA's Nonforfeiture Requirements

Plaintiff argues that summary judgment on Count IV of the Complaint, *i.e.,* wrongful denial of benefits, is appropriate because Article VI(6)(b) of the Plan, as a matter law, violates ERISA's anti-forfeiture provision, 29 U.S.C. § 1053(a)(3)(b)(ii). The pertinent portion of ERISA governing this dispute is § 203(a), which states that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ." 29 U.S.C. § 1053(a). That age is defined as the earlier of "the time a plan participant attains normal retirement age under the plan, or . . . the time a plan participant attains age 65 . . . ." 29 U.S.C. § 1002(24).[8] The general rule of § 203(a) is subject to several exceptions. One of these exceptions

---

[7]     While Plaintiff did not specifically argue for the existence of any procedural irregularities, he did raise issues related to them, such as, *inter alia*, inconsistent application of the Plan's return-to-work provisions to other pensioners. However, because I find, *infra*, that the Trustees' claim determination is arbitrary and capricious, I need not consider these purported irregularities.

[8]     While Plaintiff was not 65 years old at the time he submitted claim for pension benefits, this rule nevertheless applies because under Article IV(2) of the Plan, Plaintiff has attained normal retirement age.

allows benefits to be suspended if the pensioner returns to work in the same industry, trade and geographic area. *See* 29 U.S.C. § 1053(a)(3)(B)(ii); *Geib v. New York State Teamsters Conference Pension and Retirement Fund*, 758 F.2d 973, 975 (3d Cir. 1985).[9] In relevant part, that provision states:

> A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits --
>
> (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.
>
> The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph . . . .

29 U.S.C. § 1053(a)(3)(B)(ii).

Here, to reiterate, Article IV(6)(b) states: "[i]f a Pensioner accepts employment in the electrical construction industry, pension payments accrued after January 1, 2002 and payable prior to attainment of age 62 shall immediately cease as of the first of the month next following the date of such employment, except if employed as a teacher/instructor of an IBEW approved training program or as an electrical inspector." Pension Plan, Article VI(6)(b). Plaintiff argues that Article IV(6)(b) violates the ERISA anti-forfeiture rule

---

[9]     In allowing plans to suspend the benefits of retirees who accept certain kinds of postretirement employment, "Congress seems to have been motivated at least in part by a desire 'to protect participants against their pension plan being used, in effect, to subsidize low-wage employers who hire plan retirees to compete with, and undercut the wages and working conditions of employees covered by the plan.'" *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 742 n.1 (2004) (quoting 120 Cong. Rec. 29,930 (1974) (statement of Sen. Williams regarding section 203(a)(3)(B))).     .

because it provides for the cessation of benefits to any pensioner who accepts employment in the "electrical construction industry," without regard to whether such pensioner is working in the same trade or craft, or in the same geographic area as when the pensioner's benefit commenced. In other words, Plaintiff contends that Article IV(6)(b) is overly broad in light of the specific conditions set forth in § 1053(a)(3)(B)(ii). Alternatively, in the same vein, Plaintiff contends that because the Trustees failed to take into account whether Plaintiff was working in the same trade or craft when denying his pension benefits, the Trustees' determination was erroneous in light of federal law.

What is troubling to the Court is that the Trustees do not respond to Plaintiff's legal argument in this regard; this issue, however, is significant and probative in deciding whether the Trustees' decision to deny Plaintiff's retroactive pension benefits is unreasonable. Indeed, the question of whether Article VI(6)(b) violates ERISA's nonforfeiture rules is a threshold one, and because the Trustees' claim determination depends primarily on this provision, the reasonableness of the Trustees' decision necessarily turns on the provision's legality under ERISA; the two issues are inextricably intertwined.[10] With that said, I begin my analysis with the Trustees' stated reasons for their denial of benefits.

First, in their three-page decision, the Trustees determined that the IBEW Local 269 Pension Plan — which entity the Trustees inexplicably refer to as Plaintiff's then-employer before he was terminated as the Administrative

---

[10] In other words, if the plan provision violates ERISA, the Trustees' decision based on that provision would be arbitrary and capricious.

Manager — qualified as an "Employer" under the Plan.[11]    *See* Pl's Claim

Determination Letter, dated September 10, 2015, p. 1.  The Trustees then found

that as an Administrative Manager at the Joint Funds Office, Plaintiff was an

"Employee" as defined under the Plan.   *See Id.* at pp. 1-2. Indeed, there is no

dispute that Plaintiff's "Employee" status qualified him to receive the requested-

pension benefits under the Plan.   Next, the Trustees recited Article VI(6) in its

entirety, including the subject provision, Article VI(6)(b).   Article VI(6) sets forth

"return-to-work" rules under the Plan. According to the Trustees, "work in the

electrical construction industry would constitute disqualifying employment." *Id.*

at p. 3.  Without defining the term "electrical construction industry," the Trustees

simply explained that this line of work "would not be limited to working with the

tools of the trade but encompasses work in the electrical industry as an

estimator, foreman, business manager of the local union, business agent of the

local union, clerical employee of the IBEW union or benefit funds." *Id.*   This

constitutes the sum total of the reasoning that the Trustees provided for their

denial of Plaintiff's benefits.  In conclusion, the Trustees opined that

> if Mr. Aicher were permitted to receive pension [benefits] and
> continue to be employed as a salaried employee of the Pension Plan
> as an Administrator then every clerical employee of the benefit
> funds, clerical employee of the local union, business manager of the
> local union, business agents of the local union, all of whom are
> responsible for the day to day operation of the local union and

---

[11]    Defendants concede that, at the time of his termination, that Plaintiff was
not employed by the IBEW Local Union No. 269 Pension Plan.   *See* Def.
Statement of Uncontested Material Facts, ¶ 16.  As such, it was inaccurate for
the Trustees to have designated the Pension Plan as Plaintiff's then-employer for
the purposes of their claim determination.  In any event, this particular portion
of the Trustees' decision is not relevant to the resolution of the issues in this
case.

benefit funds within the electrical industry, could receive monthly pensions and continue to be employed.

*Id.*

While the claim determination discussed the type of industry with which Plaintiff engaged, the Trustees did not define the term "electrical construction industry." More importantly, nowhere in Article VI(6)(b), or in the Trustees' decision was there any discussion of Plaintiff's former "trade" or "craft." This is critical, because, in the context of "return to work rules," ERISA forbids the suspension of an accrued benefit derived from employer contributions, except in the case of a multiemployer plan, such as the Plan in this case, where the employee was employed 1) in the same industry; 2) in the same trade or craft; and 3) the same geographic area covered by the Plan. *See* 29 U.S.C. § 1053(a)(3)(B)(ii). Indeed, written in the conjunctive, the statute requires all three conditions be met before the Trustees can freeze pension benefits. Notably, ERISA leaves the terms "industry" and "trade" or "craft" undefined, but the statute explicitly delegates that authority to the Department of Labor ("DOL"). *See* 29 U.S.C. § 1053(a)(3)(B).[12] In turn, 29 C.F.R. 2530.203-3, promulgated by

---

[12] Where Congress has delegated authority to an agency to implement an ambiguous statute, courts are required to accept the agency's statutory interpretation, so long as it is reasonable. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *see also United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Here, Congress has so authorized the DOL to "prescribe such regulations as may be necessary to carry out the purposes" of section 203(a)(3)(B). 29 U.S.C. § 1053(a)(3)(B). Accordingly, these regulations are entitled to deference under *Chevron*. *See Eisenrich v. Minneapolis Retail Meat Cutters*, 574 F.3d 644, 650 (8th Cir. 2009)("We conclude that the Department of Labor's regulation represents a reasonable interpretation of 'trade or craft' and is entitled to deference under *Chevron*.").

the DOL, defines the term "industry" as "the business activities of the types engaged in by any employers maintaining the plan." 29 C.F.R. § 2530.203-3(c)(2)(i). The regulation goes on to define a "trade" or "craft" as:

> (A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B) of this paragraph (c)(2)(ii). For purposes of this paragraph (c)(2)(ii), the determination whether a particular job classification, job description or industrial occupation constitutes or is included in a trade or craft shall be based upon the facts and circumstances of each case. Factors which may be examined include whether there is a customary and substantial period of practical, on-the-job training or a period of related supplementary instruction.

29 C.F.R. § 2530.203-3(c)(2)(ii). Based on the plain language of the regulations, it was incumbent upon the Trustees, here, to consider whether Plaintiff's employment was in the same industry — as well as whether the Administrative Manager position was in the same trade or craft as Plaintiff's previous employment. See *Gardner v. Central States, Southeast and Southwest Areas Pension Fund*, No. 93-3070, 1993 U.S. App. LEXIS 34130, at *25-26 (6th Cir. Dec. 21, 1993)(finding that 29 C.F.R. § 2530.203-3(c)(2) "is written in the conjunctive, and thus only applies when a pensioner, who has reached normal retirement age, engages in reemployment that meets each of the conditions set forth in the rule.") The case law supports this conclusion.

Unfortunately, there is a dearth of precedent in the Third Circuit dealing with ERISA's nonforfeiture rules in this specific context. However, I find various out-of-circuit cases instructive. In *Tapley v. Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry*

24

*Retirement Plan*, 728 F.3d 114 (9th Cir. 2013), the trustees of a pension plan determined that the plaintiff-pensioners' respective post-retirement jobs as a traffic flagger and snow plow operator fell into the same "job classification" as their former union jobs as skilled mechanics. Relevant in that case, the "post-retirement service" rules of the pension plan defined employment as: (a) within the geographic area covered by the Plan which for purposes of this Section shall consist of all of the State of Alaska and the State of Washington; (b) in a *job classification* in which the Participant was employed while in Covered Employment, whether or not such employment is under the terms of a Collective Bargaining Agreement or written Contribution Agreement or in a supervisory capacity over such job classification; and (c) in the *industry* in which the Individual Employers participate (any business activity of the type engaged in by the Individual Employers maintaining the Plan). Reviewing the plan language, the circuit court first found that the term "job classification" does not comport with the regulation's definition of "trade or craft." *Id.* at 1140 n.2. Rather, the court explained that the manner in which the trustees defined "job classification" unreasonably expanded the plan to "sweep within its ambit an overly broad range of skills." *Id.* at 1141 (citing *Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 544 F. Supp. 2d 848, 857 (D. Minn. 2008), *aff'd in relevant part*, 574 F.3d 644 (8th Cir. 2009)). In that regard, the court held that the trustees' determination was arbitrary, and cautioned that "[t]he availability of earned retirement benefits cannot be frustrated by an untethered interpretation" of a pension plan that is inconsistent with ERISA. *See id.* at

1143.

Even more persuasive, in *Smith v. CMTA-IAM Pension Trust*, 654 F.2d 650 (9th Cir. 1981), the defendant pension trust operated a multiemployer pension plan and denied plaintiff his employee benefits when he reached the age of 62 years because, according the trust, plaintiff remained employed in the same industry for an employer who participated in the pension plan. Plaintiff filed suit, alleging that the pension trust's suspension provision violated the nonforfeiture rule of § 203(a) of ERISA. The operative post-retirement employment is defined under the plan as "[a]ny retired member who is or becomes employed in the metal trades industry or for a participating employer . . . shall receive no benefits for the month following any month in which he is so employed . . . ." *Id.* at 653 n. 1. The circuit court found that "[t]he trustees' decision to suspend [plaintiff's] benefits was not based on his fulfillment of the three prerequisites described in section [1053](a)(3)(B)(ii)." *Id.* at 658-59. Rather, the court reasoned, the benefits were suspended because the trustees determined that the plaintiff was employed in the metal trades industry, and for a participating employer either of which type of employment was an independent ground for suspension under the plan. *Id.* at 659. Having made those findings, the appeals court reversed the district court's order dismissing plaintiff's ERISA claim. In so doing, the court explained that while the trustees properly consider the element of industry, *see id.* at 659, they failed to consider whether plaintiff was employed in the "same trade or craft." *Id.* Ultimately, the court found that "suspensions [] that are not expressly permitted by section [1053](a)(3)(B) [of ERISA] are unlawful even though

permitted by the [p]lan." *Id.*

Similarly, in *Thomson v. I.A.M. Nat'l Pension Fund*, 616 F.2d 343 (7th Cir. 1980), the plaintiff, after becoming entitled to retirement benefits under the pension fund, was asked by the trustees to sign a certification that the plaintiff must refrain from, *inter alia*, (a) employment with any employer who contributes to the fund, (b) employment with any employer in the same or related business as any employer who contributes to the fund, (c) self-employment in such a business, and (d) employment or self-employment in any business which is or may be under the jurisdiction of the union. *Id.* at 346. Plaintiff brought suit under ERISA claiming that those restrictions violate ERSIA's nonforfeiture provisions. The circuit court agreed and found that those specific restrictions violated § 1053(a)(3)(B) of ERISA, because they purport to impose limitations on a retiree's employment that are not expressly permitted by § 1053(a)(3)(B), which restrictions include "in the same industry" *and* "in the same trade or craft." *Id.*

At least one district court in this circuit has come to the same conclusion. In *Clark v. Greater Pennsylvania Carpenters' Pension Fund*, No. 13-928, 2014 U.S. Dist. LEXIS 62487 (W.D. Pa. May 6, 2014), the court granted summary judgment in the plaintiff's favor after finding that the defendant-trustees' overly broad interpretation of the plan cannot be reconciled with ERISA's nonforfeiture provisions. *Id.* at *10-15. Other district courts are in accord. *See Lee v. Sheet Metal Workers' Nat'l Pension Fund*, 760 F. Supp. 2d 711, 723 (E.D. Mich. 2010) (finding the trustees' decision on whether pensioner-plaintiff's employment after retirement from the union was arbitrary and capricious, because the trustees,

in making their claims determination, failed to comport the plan with the definitions set forth in 29 C.F.R. § 2530.203-3(c)(2)(ii)); *see also DeVito v Local 553 Pension Fund*, No. 02-4686, 2005 U.S. Dist. LEXIS 1036, at *21-22 (S.D.N.Y. Jan. 26, 2005)(holding that because the plan defines "post-normal retirement age disqualifying employment" only by industry, geographic location and job classification, but failed to include "trade or craft," the plaintiff adequately stated a claim for violation under ERISA nonforfeiture rules, § 1053(a)(3)(B)(ii)).[13]

Here, in light of the case law and the Trustees' cursory decision, I cannot find that the Trustees' claim determination was reasonable. The Trustees advance several arguments to justify their denial of benefits; I will address them in turn. First, the Trustees argue that this case is unlike the circumstances presented in *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004). *Heinz* involved ERISA's anti-cutback rule, 29 U.S.C. § 1054(g)(2), which provision prohibits, *inter alia*, any amendment to the plan that would expand the categories of post-retirement employment that triggered the suspension of payment of early retirement benefits already accrued. *Id.* at 744. While I agree with the Trustees that the holding in *Heinz* is not relevant to this case, the fact that there are no anti-cutback issues in this case is not dispositive of the purported violations of ERISA's nonforfeiture provisions raised by Plaintiff in

---

[13]     Unsurprisingly, virtually all of the decisions that I have reviewed, that upheld the trustees' claim determination in the context of suspending a pensioner-plaintiff's retirement benefits, dealt with plan provisions that either have been found to comport with the conditions set forth in § 1053(a)(3)(B)(ii), or the parties did not argue that any of the plan provisions violated ERISA's nonforfeiture rules.

Count IV.

Next, the Trustees argue that because Plaintiff was an "Employee" under the Plan at all times when he was employed as an electrician, as the Assistant Business Manager of Local Union 269, and as the Administrative Manager of the Joint Funds Office, he never actually retired in order to receive pension benefits under the Plan. This argument is wholly without merit. For one, there is no dispute that Plaintiff was entitled to receive "Normal Retirement pension" under Article IV(2). As such, Plaintiff was certainly eligible to retire at the time he applied for his pension payments. While the Trustees argue that Plaintiff never intended to retire and that Plaintiff sought his pension benefits to offset the lower salary of his Administrative Manager position, that intention is of no moment. Once Plaintiff sought his benefits, as noted above, ERISA requires the Trustees to engage in a reasoned analysis — supported by factual determinations — of whether Plaintiff's post-retirement position as the Administrative Manager was in the same industry, trade or craft, and the same geographic location as his previous employment. 29 U.S.C. § 1053(a)(3)(B)(ii). It is also irrelevant that the Administrative Manager position was within the Union. Although, admittedly, that position might have some impact on the post-retirement employment determinations vis-à-vis ERISA's nonforfeiture provisions, it was, nevertheless, incumbent upon the Trustees to engage in those determinations regardless of the type of employment Plaintiff assumed after his retirement.

Finally, I examine the substantive decision of the Trustees. In their decision on remand, the Trustees found that Plaintiff's work as the

Administrative Manager was indeed in the "electrical construction industry" as set forth in Article VI(6)(B) of the Plan. Nowhere in the Plan is the term "electrical construction industry" further defined. According to the Trustees — in a summary fashion — "[w]orking in the electrical construction industry would not be limited to working with the tools of the trade but encompasses work in the electrical industry as an estimator, foreman, business manager of the local union, business agent of the local union, clerical employee of the IBEW union or benefit funds." *See* Claims Determination, p. 3. Based on this reasoning alone, the Trustees found that the position of the Administrative Manager was in the "electrical construction industry." This analysis is woefully deficient.

According to the DOL's definition, the term "industry" stands for "the business activities of the types engaged in by any employers maintaining the plan." 29 C.F.R. § 2530.203-3(c)(2)(i). Hence, following the directive, in assessing this element, the Trustees must examine whether Plaintiff's reemployment involved "working for an employer which is engaged in the same business activities as employers which make contributions to this Pension Fund." *Whisman v. Robbins*, 55 F.3d 1140, 1149 (6th Cir. 1995). It does not refer to "the outside industry." *Id.* at 1149. There is no analysis by the Trustees that the tasks performed by an Administrative Manager are similar to those types of business activities engaged in by other employers which make contributions to the Plan. The Trustees simply provide a list of skills or jobs that they believe fall within the "electrical construction industry." Indeed, while the Joint Board, as a plan-employer, purportedly contributed to Plaintiff's pension on his behalf,

the Trustees did not assess whether the business activities engaged in by the Joint Board are consistent with those activities engaged in by other plan-employers, such that a determination can be made that Plaintiff was working in the same industry. On this basis alone, the Trustees' decision to deny Plaintiff's pension benefits is arbitrary and capricious. But, the Trustees' decision suffers from a flaw more fatal.

Nowhere in the decision did the Trustee engage in any analysis whether Plaintiff's employment after retirement was in the same "trade or craft" as his previous job. As I stated earlier, to make this determination, the regulations instruct that "(A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B) of this paragraph (c)(2)(ii)." 29 C.F.R. § 2530.203-3(c)(2)(ii). In order to come to a reasoned determination of these factors, the Trustees, under the regulations, must look to the facts surrounding Plaintiff's circumstances. As the Seventh Circuit in *Eisenrich* observed, "this [regulatory] language [] prohibit[s] a plan from deciding whether a retiree worked in a 'trade or craft' based solely on the retiree's 'job classification, job description or industrial occupation.' Because a plan must rely on the 'facts and circumstances of each case,' it must consider the 'skill or skills' actually used by the retiree in his job." *Eisenrich*, 574 F.3d at 650. Under the "functional" approach endorsed by the regulation, "a plan must look to the skills put to 'use by the retiree,' not by other employees in his

occupation." *Id.* Here, Article VI(6(b) of the Plan does not instruct the Trustees to examine "trade or craft." And, the Trustees simply did not engage in the pertinent analyses in accordance with the obligations under ERISA and its attendant regulations. While the record has some information as to what Plaintiff's duties were as an Administrative Manager, it is not the task of this Court, in the first instance, to undertake the necessary analysis for the Trustees in this appeal. Rather, "suspensions [] that are not expressly permitted by section [1053 (a)(3)(B) of ERISA] are unlawful even though permitted by the Plan." *Smith*, 654 F.2d at 659.[14]

Accordingly, based on the foregoing reasons, I find that the Trustees' denial of Plaintiff's retroactive pension payments for the period of September 2010 to December 2011, is arbitrary and capricious.[15] Thus, summary

---

[14] I note that Plaintiff did not challenge the Trustees' determination as to the geographic location requirement under § 1053(a)(3)(B)(ii). As such, I will not discuss that element here.

[15] The Court may remand this matter to the Trustees or directly grant or deny benefits. *See Carney v. Int'l Broth of Elec. Workers Local Union Pension Fund*, 66 Fed. Appx. 381, 386-387 (3d Cir. 2003); *see also Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 302 (W.D. Pa. 2008); *Fisher v. Aetna Life Ins. Co.*, 890 F. Supp. 2d 473, 486 (D. Del. 2012); *Addis v. The Limited Long-Term Disability Program*, 425 F. Supp. 2d 610 (E.D. Pa. 2006), *aff'd* 268 Fed. Appx. 157 (3d Cir. 2008); *Sanderson v. Cont'l Cas. Corp.*, C.A.01-606, 2005 WL 2340741, at *6 (D. Del. Sept. 26, 2005) ("After a court determines that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits."). Here, while this Court could remand this matter to the Trustees to make the required assessments outlined in this Opinion, I have already remanded this matter to the Trustees based on the very issues discussed in this Opinion, and they failed to adequately perform that task. The delay to Plaintiff is substantial. Therefore, in my discretion, I am not issuing a remand again.

judgment is entered in favor of Plaintiff on Count IV of the Complaint.

## 2. Remedy

To remedy the wrongful denial of benefits, Plaintiff seeks an award of $109,044.80, which represents the amount of the pension benefits he should have received from September 1, 2010 through December 31, 2011. Because Defendants have not challenged the accuracy of this amount, pursuant to 29 U.S.C. § 1132(a)(1)(B), I find that an award of $109,044.80 to be appropriate.

Next, Plaintiff seeks prejudgment interest to compensate him. The Third Circuit has held that "interest is presumptively appropriate when ERISA benefits have been delayed." *Fotta v. Trs. of the UMW Health & Ret. Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998). In fact, prejudgment interest is ordinarily granted unless exceptional or unusual circumstances exist making such an award inequitable. *See Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992) ("Thus prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable."). An award of prejudgment interest, its rate or amount and the time period involved, however, is within the court's discretion, tempered by fairness and equity. *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 205-06 (3d Cir. 2004). In that connection, prejudgment interest is appropriate when the amount of underlying liability is reasonably ascertainable and the relief granted would otherwise fall short of making the claimant whole because the use of the money which was legally due has been denied to the claimant. *See Anthuis*, 971 F.2d at 1010.

Here, I find that an award of prejudgment interest is appropriate in light of the fact that Defendants deprived Plaintiff the use of his pension benefits for the relevant time period. Plaintiff seeks an award of prejudgment interest of $636.47. To calculate this proposed interest, Plaintiff employed postjudgment interest rate set forth in 28 U.S.C. § 1961, which is "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System . . . ." 28 U.S.C. § 1961(a). More specifically, Plaintiff used the weekly average 1-year constant maturity Treasury yield for the last week of the preceding month of each pension payment and then multiplied that amount by the amount of months Plaintiff was deprived of his benefits. *See* O'Connor Cert., Exh. 30. I find this rate and method reasonable, because "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest [in ERISA cases] unless [the court] finds, on substantial evidence, that the equities of that particular case require a different rate." *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 628 (9th Cir. 2007) (citations and quotations omitted); *see Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*, 751 F.3d 740, 751 (6th Cir. 2014); *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004).

Accordingly, the total amount of the judgment awarded on Count IV of the Complaint is $109,681.27.

### C.    Count III – Improper Interference

In Count III of the Complaint, Plaintiff alleges that Defendants interfered with his attempt to exercise his right to receive a retirement pension from the

Plan. Compl., ¶ 127. In that regard, Plaintiff bases this alleged interference on the assertion that Defendants discouraged him from obtaining a written determination of his claim for pension benefits. Plaintiff also claims that Defendants instructed the Third-Party Plan Administrator not to process Plaintiff's application. While Plaintiff cites the statutory authority for his interference claim under 29 U.S.C.§ 1132(a)(3), the proper statutory basis for his claim is under 29 U.S.C. § 1140.[16]

"Section 510 of ERISA prohibits employer conduct taken against an employee who participates in a pension benefit plan for 'the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'" *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987) (quoting 29 U.S.C. § 1140); *Boyle v. Penn Dental Med.*, No. 16-3621, 2017 U.S. App. LEXIS 8799, at *(3d Cir. May 19, 2017). Section 1140 states in relevant part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 USCS § 1201] . . . ." 29 U.S.C. § 1140.

---

[16] In his summary judgment motion, Plaintiff claims that he is entitled to summary judgment on Count III because he has proven that 1) the Trustees violated § 1104, which provision imposes a fiduciary duty on the Trustees; and 2) the Plan failed to provide adequate notice in writing to Plaintiff of the denial of his claim for benefits, in violation of § 1133. However, nowhere in the Complaint does Plaintiff predicate his interference claim in Count III on these alleged substantive violations. Plaintiff may not rewrite or amend his complaint in his summary judgment briefing. *See Bell v. City of Phila.*, 275 Fed. Appx. 157, 160 (3d Cir. 2008). Thus, I will not consider these purported violations.

Congress enacted such a provision primarily to prevent "'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Gavalik*, 812 F.2d at 851 (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)); *see also Zipf v. American Telephone & Telegraph Co.*, 799 F.2d at 889, 891 (1986) (citing *Butler*); *Donahue v. Custom Management Corp.*, 634 F. Supp. 1190, 1197 (W.D. Pa. 1986) (quoting *Butler*). To recover under § 510, a plaintiff must "demonstrate that the defendant had the specific intent to violate ERISA." *Gavalik*, 812 F.2d at 851 (citations and quotation omitted).

To establish a claim for interference with ERISA rights under Section 510, a plaintiff must prove (1) the employer engaged in prohibited conduct, (2) taken for the purpose of interfering, (3) with the attainment of any right to which the employee may become entitled. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997) (citing *Gavalik*, 812 F.2d at 852). The "prohibited employer conduct" element under Section 510 includes an employer's decision to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary." 29 U.S.C. § 1140. The Third Circuit has limited actionable conduct under Section 510 to that which affects the employer-employee relationship. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (Section 510 ERISA claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits") (internal quotations omitted), *cert. denied*, 520 U.S. 1116 (1997).

Here, putting aside the evidence Plaintiff proffers on his motion for

summary judgment to establish his interference claim, even taking Plaintiff's allegations as true — that Defendants discouraged him from filing benefits claim or that Defendants instructed the Third-Party Plan Administrator to not process Plaintiff's application for benefits — Plaintiff has failed to present any actionable prohibited employer conduct within the meaning of section 510.  *See Boyles v. Am. Heritage Life Ins. Co.*, No. 15-274, 2016 U.S. Dist. LEXIS 96962, at *50-51 (W.D. Pa. Jul. 25, 2016)(finding that dissuading a claimant from filing an ERISA claim does not amount to prohibited employer conduct under § 510); *see also Jackson v. Rohm & Haas Co.*, No. 05-4988, 2007 U.S. Dist. LEXIS 67666, at *6 (E.D. Pa. Sept. 12, 2007) (dismissing the plaintiff's claim for interference with benefits where plaintiff had "alleged conduct unbecoming an ERISA fiduciary," but had not alleged any conduct affecting his status as an employee).  Because Plaintiff has not presented any evidence on his interference claim that could demonstrate that Defendants discharged, fined, suspended, expelled, disciplined, or discriminated against, Plaintiff for pursuing his ERISA benefits,[17] Plaintiff's motion for summary judgment on this claim is denied.[18]

### D.    Attorneys' Fees and Costs

Section 502(g)(1) of ERISA provides that a district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *see Tomasko v. Weinstock,* 357 Fed. Appx. 472 (3d Cir. Dec.

---

[17]    I note that Plaintiff has asserted two separate causes of action for wrongful termination and retaliation, respectively, in violation of § 510 of ERISA.

[18]    Defendants have not moved for summary judgment on Count III of the Complaint.

18, 2009). In determining whether such a fee award is warranted pursuant to this provision, courts must consider the following five factors, referred to as the *Ursic* factors:

> (1) the offending parties' culpability or bad faith;
>
> (2) the ability of the offending parties to satisfy an award of attorneys' fees;
>
> (3) the deterrent effect of an award of attorneys' fees against the offending parties;
>
> (4) the benefit conferred on members of the pension plan as a whole; and
>
> (5) the relative merits of the parties' positions.

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983). "While the statutory provision itself does not dictate that a party must prevail in order to be awarded attorney's fees, courts have interpreted the statute as requiring a party to prevail before fees will be awarded." *Local 827 IBEW v. Verizon N.J., Inc.*, No. 02-1019, 2006 U.S. Dist. LEXIS 56453, at *3 (D.N.J. Aug. 3, 2006)(citing *McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253 (3d Cir. 1994) ("[a]ttorneys' fees may be awarded to prevailing parties in actions brought under [ERISA]")); *O'Malley v. Sun Life Assur. Co. of Am.*, No. 04-5540, 2006 U.S. Dist. LEXIS 2770, at *31 (D.N.J. Jan. 23, 2006)("[b]ecause Plaintiff did not prevail on her summary judgment motion, the Court will not consider her request for an award of attorneys' fees"); *see also Martorana v. Bd. of Trustees of Steamfitters Local Union 420 Health, Welfare and Pension Fund*, 404 F.3d 797 (3d Cir. 2005) (noting that "ERISA allows for the award of attorney's fees to the prevailing party at the discretion of the court").

To determine whether a party is the "prevailing party," the Court must analyze whether: "(1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant." *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 259 (D.N.J. 2000). With respect to the first prong, the Court can "compare [] the relief sought from the lawsuit and the relief eventually obtained." *Id.*

Here, Plaintiff requests attorneys' fees and costs, albeit Plaintiff's counsel did not include any certifications setting forth the amount of fees or the number of hours billed. I find that it is premature at this juncture to assess whether Plaintiff is entitled to fees. While I have entered judgment in Plaintiff's favor on Count IV of the Complaint, Counts I and II, *i.e.*, the wrongful termination and retaliation claims, remain pending in this case. This is significant, because one of the *Ursic* factors requires the Court to assess the offending party's culpability or bad faith. Depending on the outcome of those causes of action, the Court would have a complete factual record to determine bad faith. In that regard, depending on Plaintiff's ultimate success in this litigation, the Court would be in a better position to determine whether an award of attorneys' fees is appropriate for deterrence purposes, and to assess the degree of benefit conferred upon members of the pension plan. Finally, it is also appropriate to defer the attorneys' fees considerations because the degree of Plaintiff's success at the end of this case would be extremely probative to this Court's assessment of whether Plaintiff is a prevailing party. Accordingly, Plaintiff's request for fees is denied

without prejudice; Plaintiff may apply for fees and costs at the conclusion of this suit.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part as follows: 1) defendant IBEW Local Union No. 269 Pension Plan is dismissed as a defendant in Counts I and II; 2) defendants IBEW Local Union No. 269 Pension Plan and Board of Trustees of IBEW Local Union No. 269 Pension Plan are the only proper defendants to be named in Counts III and IV, all other defendants are dismissed from those two counts.

Next, Plaintiff's motion for summary judgment is also **GRANTED** in part and **DENIED** in part. Summary judgment is granted as to Count IV, wrongful denial of ERISA benefits, and the total amount of the judgment awarded on Count IV of the Complaint is $109,681.27, which includes an award of prejudgment interest in the amount of $636.47. However, Plaintiff's motion is denied as Count III of the Complaint. Plaintiff's application for attorneys' fees and costs is denied without prejudice.

Dated: May 31, 2017                         /s/    Freda L. Wolfson
                                            Freda L. Wolfson, U.S.D.J.